## FEATHERSTON MINING COMPANY *v.* YOUNG.

1. Where a water right was conveyed to a mining company without the use of the words " assigns " or " successors," the company acquired an interest, which it could convey to a subsequent purchaser.
2. Where the mining company owned only a leasehold interest in land and obtained from an adjacent owner the right to pump water from his property as long as the mine was operated on the leasehold estate, the water privilege was not an easement in gross, personal to the company, but was appurtenant to the mine, and passed to a subsequent purchaser of the mining company's interest.
3. In consideration of bettering the chance of getting iron ore on Y's farm mined and sold, he granted to a mining company a water privilege, with the right to locate their pump line over his land to their washer to be located on the south side of Duke's hill, such privilege " to continue as long as the said company shall mine iron ore and use water from said location, then they must move their property and vacate said premises." *Held,* that the water easement was defeasible, and terminated when the mining company ceased operations on Duke's hill and moved its washer to an adjoining mine.
4. The evidence was in conflict as to whether the defendant was estopped because he knew of plaintiff's construction of the conveyance, and with such knowledge permitted it to expend large sums of money without objection ; and this court can not interfere with the finding of the trial judge thereon.

Argued July 23, — Decided August 14, 1903.

Petition for injunction.    Before Judge Bartlett.    Polk superior court.    April 21, 1903.

Bunn, receiver of the Wray Mining Company, having about exhausted the ore in the Wray hill, determined to open a new mine across the valley, in what is known as Duke's hill, and the defendant Young, who owned a mine west of Duke's hill, with a view of having a spur-track brought nearer to his property and his ore thereby made more marketable, consented for the receiver to obtain water from the " Casey branch," on Young's property, and construct the necessary pipe line across his land to the new mine to be opened on Duke's hill.    In pursuance of this arrangement he executed an agreement, dated April 16, 1897, which recited that "for the consideration of bettering the chances of getting iron ore on what is known as the J. S. Young farm in Polk county mined and sold," he conveyed to the company " the right to locate their pump on the branch running through said farm near the foot of the hill, south of J. S. Young's dwelling. . . Said company may locate their pipe line over the nearest and most practicable route over his lands to their washer to be located on the Duke's hill of ore on the

Welcome Duke farm, . . the above rights and privileges to continue as long as the said company shall mine ore and use water from said location, then they must move their property and vacate said premises." The conveyance said nothing about successors and assigns. The parties were in dispute as to the conversations antedating the instrument, and also as to the circumstances under which the pump, after having been located near Young's dwelling, was to move further down the stream. The mine having been opened on Duke's hill, water was supplied from the Young farm for several years. The Wray property was finally sold at public outcry, the receiver made a deed to G. W. Featherston, who subsequently conveyed the same to the Featherston Mining Company, by which the Duke's hill mine was operated, and water used from the stream on Young's land until the latter part of 1902, when, the ore being exhausted, and the company concluding that it could reopen operations on the Wray hill, it proceeded to complete a flume from the Duke's hill location to the proposed new location across the valley on the Wray hill. Whereupon Young gave notice that the company must move its pump, obstructed the right of way to the station, and threatened to cut off the supply of water. The company applied for an injunction to restrain Young from interfering with the status, or from diverting the water or closing up the way leading to the pump station. It was claimed that Young knew that the company was constructing the flume and making arrangements to use the water at the new location, and that he was estopped by reason of permitting the expense to be incurred without objection. On this point the evidence was in sharp conflict. The court refused to grant an injunction, but passed an order preserving the status for twenty days on the company's giving bond.

*Blance, Wright & Tison*, for plaintiff.

*Bunn & Trawick*, for defendant.

LAMAR, J. (after stating the foregoing facts.) Under the Civil Code, § 3083, the words "heirs," "assigns," "successors," are not necessary in order to convey the fee or to make the estate created by the instrument transmissible to subsequent purchasers. The Wray Mining Company did not own the fee, but only a leasehold estate in the Duke's hill mine; but that fact did not necessarily make the water privilege an easement in gross, and personal to the Wray

·Mining Company. The water privilege was appropriate and useful to the estate of the grantee; and as there is nothing to show an intention to create a mere personal right, the easement should be held appurtenant to the mine. *Stovall* v. *Coggins Co.*, 116 *Ga.* 376, 380, is directly in point. There a right of way was held appurtenant to a quarry in which the grantee of the easement had no estate beyond that arising from a conveyance of all rock on a certain tract of land.

But, whether construed in the light of the testimony or according to the terms of the instrument itself, the water privilege ceased whenever the mine on Duke's hill was abandoned. The paper is explicit that the washer should be located on the south side of Duke's hill, and that the privilege was " to continue as long as the said company shall mine iron ore and use water from said location." Even if the paper be treated as ambiguous, under the Civil Code, § 3675, par. 5, words may be supplied or words and sentences can be transposed, and it is evident that the draftsman meant to say that the privilege should continue as long as the company should mine iron ore from said location and use water thereat. When such operations ceased there, the company was to move the pump and vacate Young's premises.

The claim that Young had without objection seen petitioner expend large sums of money on the faith of its claim of right to use the water was denied by the defendant, and we can not interfere with the finding of the judge thereon, and his ruling " that there was nothing in the question of estoppel."

*Judgment affirmed. By five Justices.*