62129. CROOKS et al. v. CRIM et al.

Birdsong, Judge.

Breach of contract. The 17 appellants are social workers and certificated teachers employed by the Atlanta Board of Education. All of the appellants are tenured employees with employment records ranging from more than three years to more than twenty years. As tenured employees each had varying degrees of seniority with concurrent bumping rights over less senior employees. Employees of the Atlanta Board of Education over the past several years had worked in two or more areas of funding, one being general funding from revenues provided by the city of Atlanta and another being in an area funded by federally supported programs. One of these federally funded programs was Title XX, Child Care Centers. For the last several years most, if not all, of the 17 appellants had worked in the Title XX program and been paid (by the Atlanta Board of Education) out of Title XX federal funds provided to the city. The documents furnished to the jury by appellants show that as late as 1977 and apparently for some time earlier, all teachers and social workers in the Atlanta system signed similar contracts. These contracts usually provided for an annual contract payable in 24 semi-monthly payments for twelve months throughout the scholastic year. It is undisputed that traditionally the school year and payment period ran from September 1 to the following August 31. It also was the policy followed by the Board of Education to determine and award incremental "step" increases in September so that the first payment in September for services performed in September (occurring on September 20) would include any incremental increases in pay. The several contracts adduced in evidence by appellants for the 1977-78 school year were all presented to the appellants apparently in May, 1977, before the end of the June teaching period. Each contract was executed within a short time thereafter but indicated that the contract was viable between the parties as of the first day of September, 1977. For the school year

1978-79, the same form contracts were presented to each of the appellants as well as other employees. However, all the contracts indicated that the contract was entered into between the parties as of the first day of July. Contracts in evidence for the years 1979-80 and 1980-81 also indicated an effective date of July 1. Thus all the contracts were signed by the employees in May or June of each year and indicated that the contracts took effect on July 1. However, it was not disputed that all the general fund contracts contemplated an effective period for payment purposes as extending from September 1 until August 31 of the following year. Thus, whether a teacher or social worker paid from general funds worked in July or August was not relevant to payment because the contract called for 24 semi-monthly payments extending from September 1 to August 31.

In the spring of 1978 the same general contracts were presented (by mail) to all returning employees showing a contract date of July 1, 1978. However, those contracts mailed to the 17 appellants, all of whom were engaged in the Title XX day care program during the year 1977-78, had a provision different from all the other professional employment contracts. Whereas all other contracts for the school year 1978-79 were understood to run from September 1 to August 31, each of the 17 contracts involved had an asterisk by the words "scholastic year 1978-1979*." At the bottom of each of these 17 contracts were the additional words "*July 1, 1978-June 30, 1979 (Title 20 Program)." Additionally the contract provided: "This agreement contains the entire understanding between the parties hereto, and supersedes any prior written or oral contracts or agreements between the parties hereto respecting the subject matter." Each of the appellants executed their respective contract prior to July 1, 1978 and effective July 1, 1978. Under the immediately preceding contract signed by each appellant for school year 1977-78, each appellant was due the 21st through 24th payments under that contract for salary due for July and August, 1978. However, as interpreted by the trial court, the new contract for school year 1978-79 became effective July 1, 1978 and ran for twelve months until June 30, 1979. Because the 1978-79 agreement was a new contract which superseded all previous agreements between the parties, the effect of the new contract was to nullify the July and August payments under the 1977-78 contract and replace those two months' salary installments with those provided under the 1978-79 contract. Inasmuch as the amounts paid were the same, appellants had no lapse of payments. In September, 1978 each appellant received his or her incremental increase along with all other Atlanta school teachers and social workers.

In January or February, 1979 each of the appellants was notified

that the Title XX funding for the day care centers would expire as of June 30, 1979. At conferences attended by appellants they were advised that they would not be on the payroll for July and August, 1979 but that they would be offered new contracts under general funding (provided by the city of Atlanta) in the new school year commencing in September, 1979 with appropriate bumping rights. All appellants were offered new contracts and most accepted those contracts prior to July 1, 1979. However, in July and August, 1979, all the appellants were off the school payroll, thus losing certain seniority accumulation, insurance coverage, and were not allowed to exercise their bumping rights until the beginning of the new contract period in September, 1979. The appellants brought suit seeking damages for breach of contract resulting from the loss of salary for the two months and other expenses incurred while off the payroll. At the conclusion of the appellants' evidence the defendant Superintendent of the Board of Education, the President of that Board and each of its members (appellees) moved for a directed verdict, contending that there were no disputed questions of fact as to the provisions of the contract. Appellants resisted the motion contending that there were issues as to the intent of the contracting parties, that the contracts were ambiguous and issues raised as to the propriety of the denial of bumping rights. The trial court found no dispute of fact and directed a general verdict in favor of all the defendants (the appellee Board) and against each of the appellants. Appellants bring this appeal enumerating four alleged errors. *Held:*

It is manifest that the only real issue in this case is whether the contracts involved are ambiguous, i.e., whether the parties intended to enter into a contract running from July 1, 1978 until June 30, 1979 or one running from September 1, 1978 until August 31, 1979. While enumerations 3 and 4 pertain to the refusal of the admission of evidence, this evidence was offered to reflect upon the ambiguity of the provisions of the contracts. If the trial court was correct in concluding that the contracts were clear and unambiguous, then the resolution of the last two enumerations is mooted.

We conclude, as did the trial court, that the terms of the contract for the year 1978-79 contain no ambiguities. The contract calls for 24 payments, payable semi-monthly on the 5th and 20th of each month, running from July 1, 1978 until June 30, 1979. There is no dispute that the Board of Education fully performed that contract.

Prior to and including the contract year 1977-78, the contracts were signed in May or June of each year and provided for a school year extending from September 1 until August 31 with an effective date of September 1. Beginning in 1978 and each year thereafter the contracts were executed in the same way (i.e., being signed in May or

June and providing for payment for services rendered between September 1 and August 31 but with an effective date of July 1). However, the contracts of each of the appellants for the one year only of 1978-79 provided that as part of the Title XX program, those particular contracts not only were dated July 1, 1978 but the school year also ran from July 1 to the following June 30. Even though the appellants were still due salary payments for July and August, 1978 under the 1977 contract, their duties for July and August were performed by authority of the new 1978 contract which by its explicit terms expressly superseded the 1977 contract.

Where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court. But a contract is not ambiguous, even where difficult to construe (a factor not present in this case) unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Village Enterprises v. Georgia R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901). However, no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation. *Benefield v. Malone,* 112 Ga. App. 408 (145 SE2d 732). Thus where the provisions of a contract are unambiguous, and interpretation is made by the court, still this does give the trial court liberty to revise the contract while professing to construe it. *Smith v. Standard Oil Co.,* 227 Ga. 268 (1) (180 SE2d 691); *Stuckey v. Kahn,* 140 Ga. App. 602, 606 (231 SE2d 565). Lastly we observe that the parol evidence rule fixes the finality of a written contract which is unmixed with fraud respecting the subject matter. It is, moreover, a rule of substantive law, and though parol evidence be admitted without objection or over objection, it is without probative value to vary terms of a written contract. *Lyon v. Patterson,* 138 Ga. App. 816, 820 (227 SE2d 423); *Cooper v. Vaughan,* 81 Ga. App. 330, 337 (58 SE2d 453).

Based upon the foregoing we find no error in the rejection by the trial court of evidence offered to explain the intent of the parties, i.e., to vary the plain terms of the contract. Moreover, there being no issue of material fact and verdict being demanded for the Board of Education, there was no error by the trial court in directing a verdict for all the defendants. *Johnson v. Mann,* 132 Ga. App. 169 (207 SE2d 663). We find no merit in any of the enumerations of error.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 29, 1981.

*Torin D. Togut,* for appellants.
*Bruce H. Beerman,* for appellees.