71336. STINCHCOMB v. CLAYTON COUNTY WATER AUTHORITY.
(340 SE2d 217)

DEEN, Presiding Judge.

Appellant Stinchcomb, a Clayton County resident, owned adjoining lands in Clayton and Fayette Counties. On May 25, 1972, he granted the Clayton County Water Authority, appellee here, an easement to run a sewer line across part of his Clayton County land, in return for which he was paid $1 and given permission to "tap on to such sanitary sewer line[,] such sewer lines as he desires at the same cost as to others[,] whether the lands served by such sewer lines are in Clayton or Fayette County. However, as soon as Fayette County provides a sanitary sewer line to serve such lands of the Grantor as may lie in Fayette County, Georgia[,] . . . then the Grantor shall tap on to the Fayette County sewer system." When appellant subsequently sought to tap on to the Clayton County sewer line for the servicing of his Fayette County property, the Authority denied permission on the basis that "it was ultra vires for the Clayton County Water Authority to have [so] agreed."

In April 1985 Stinchcomb filed an action for a declaratory judgment to establish his rights vis-à-vis the sewer system, pursuant to OCGA § 9-4-1. The trial court entered an order holding that the agreement meant that appellant could tap on as many lines as he wished to serve his Clayton County property but only one to serve the Fayette County land. The trial court further held that the contract created an easement which was not an interest in the land or a covenant running with the land, but only a license, and was therefore only a collateral or personal covenant and not one that would inure to appellant's heirs or assigns.

Stinchcomb appeals from those portions of the judgment which hold that the agreement does not create a covenant running with the

land and authorizes him to make only one tap-on for the purpose of servicing his Fayette County land. Appellee avers that the court is correct as to the effect of the easement but argues that appellant is not entitled to make any tap-on at all for the servicing of his Fayette County property. Appellee contends that when the Authority purported to authorize a tap-on for this purpose it was acting *ultra vires*, thereby rendering that portion of the agreement nugatory and unenforceable. *Held*:

1. The Clayton County Water Authority was created by an Act of the General Assembly (No. 367, House Bill No. 390, approved March 7, 1955). Ga. Laws 1955, p. 3344 et seq.[1] The purpose of the Act was, *inter alia*, to "authorize such Authority to acquire, construct, and thereafter operate and maintain projects embracing sources of water supply and the distribution and sale of water and related facilities to individuals, private concerns, governmental agencies and municipalities; to confer powers and impose duties on the Authority; . . . to authorize said Authority to establish a sewer system or systems in said county so as to vest . . . such Authority with the same powers, jurisdiction and authority with reference to a sewer system or systems as it may have to establish, operate and maintain a water system."

Relevant portions of the Act read as follows:

"Be it enacted by the General Assembly of Georgia as follows:

"Section 1. That the County of Clayton shall have the right, power and authority to operate, build and maintain a waterworks system, together with the right to acquire lands, construct waterworks facilities, including projects embracing sources of water supply and related facilities; to sell water and its related facilities to individuals, private concerns, governmental agencies and municipalities and counties of this State and to further authorize the said County of Clayton to accept franchises for that purpose granted by other municipalities and by counties of this State to said County of Clayton.

"Section 2. The powers granted by this Act shall authorize the County of Clayton to lay or construct water mains and water distribution systems both within and without the limits of said county . . .

"Section 3. The said County of Clayton shall have the right, power and authority to exercise police powers over the entire water system and shall have the right and authority to make rules and regulations governing the construction, operation, and maintenance, extension and connections with any water main within or without the limits of said county . . .

"Section 9. The said Clayton County Water Authority is hereby

---

[1] The Act was amended several times in subsequent years. None of the amendments pertains to the issues in the instant case.

authorized to construct a county sewerage system in said county, and all rights conferred to said board to construct, operate, and maintain a water system for said county . . . shall likewise apply [to] the construction operation and maintenance of a sewerage system for said county.

"Section 10. Any water or sewerage systems that may be constructed under the provisions of this Act shall be construed to be property of Clayton County . . .

"Section 11. The county governing authority may in its discretion alter, change, modify or repeal any of the rules or regulations adopted by the water authority.

"Section 12. The term county governing authority used in this Act shall be construed to mean the regularly elected commissioner or commissioners of roads and revenues of said county."

The Bill as introduced at the January 1955 legislative session was titled as follows:

"An Act to create the Clayton County Water Authority and to authorize such Authority to acquire, construct, operate and maintain projects embracing sources of water supply and the distribution and sale of water and related facilities to individuals, private concerns, governmental agencies and municipalities; to confer powers and impose duties on the Authority; . . . to authorize the Authority to contract with others pertaining to the water utilities and facilities and to execute leases and do all things deemed necessary or convenient for the operation of such undertakings or projects; . . . to authorize said Authority to establish sewer system or systems in said county, so as to vest in the Clayton County Water Authority the same powers, jurisdiction, and authority with reference to the Clayton County sewer system which the said Clayton County Water Authority has by virtue of this Act with reference to the Clayton County water system; . . . to provide for the separate enactment of such provision of this Act and repealing all laws or parts of laws in conflict with provisions of this Act; and for other purposes."

It is clear from the above-cited language that the Act vests the Authority with the same powers relative to a sewer system or systems as to a water system. This expressly includes the right to deal with individuals as well as with corporate bodies and governmental entities; to lay lines both within and without Clayton County; to make rules and regulations for the systems; and to execute the contracts, leases, etc., necessary for the construction, maintenance, and operation of the system. The agreement between appellant and the Authority falls within the parameters of the Act and thus does not represent an *ultra vires* act on the part of the Authority. Contrary to appellee's assertion, such an agreement is not prohibited by the State Constitution, as the provision cited by appellee did not take effect until No-

vember 7, 1972, some months after the contract was executed. See Code Ann. § 2-5901 (a) (1945); see also Const. Ga., Art. I, Sec. I, Par. X (1983). The agreement therefore remains fully enforceable according to its terms.

2. Unless there is some valid reason for doing otherwise, a contract should be construed according to the ordinary meanings of the words employed therein. OCGA § 13-2-2 (2); *R. S. Helms, Inc. v. G. S. T. Dev. Co.*, 135 Ga. App. 845 (219 SE2d 458) (1975). "If the construction [of a contract] is doubtful, that which goes most strongly against the party executing the instrument" is preferred. OCGA § 13-2-2 (5). The agreement in the instant case was drafted by appellee and states expressly that the "Grantor shall have the right to tap on to such sanitary sewer line[,] *such sewer lines as he desires . . .* whether the lands served by such sewer lines are in Clayton or Fayette County." (Emphasis supplied.) The language is plain, unambiguous, and unconditional, except for the single provision that appellant must tap on to Fayette County's sewer system "as soon as Fayette County provides a sanitary sewer line to serve such lands of the Grantors as may lie in Fayette County."

It is undisputed that Fayette County has provided no sewer line to serve appellant's property — that, in fact, Fayette County has no sewer system at all. Therefore, the condition subsequent has not been effectuated and has no force. Appellee has adduced no evidence that the Authority has made any rules or regulations that would negate any of the provisions of the subject agreement, or that the county governing authority has modified or repealed any of the Authority's rules and regulations so as to affect its terms. Moreover, the Constitutions of both the United States and Georgia prohibit *ex post facto* laws and impairment of contracts. Const. U. S., Art. I, Sec. X; Const. Ga., Art. I, Sec. I, Par. X, supra.

We hold that the trial court correctly construed the agreement in so far as tap-ons for the Clayton County property are concerned. We find no authority, however, for the trial court's construing the language of the agreement so as to limit appellant to only one tap-on for his Fayette County land. Such "construction" of plain and unambiguous language amounts to an impermissible "rewriting" of the contract. *Crooks v. Crim*, 159 Ga. App. 745 (285 SE2d 84) (1981). The plain language of the agreement treats the two segments of property in exactly the same manner, and nothing in the Act prohibits such.

3. Our scrutiny of the easement persuades us that by the very nature of the agreement the covenant is of necessity not merely personal or collateral, but is such as runs with the land. The sewer line was obviously intended to last beyond Stinchcomb's lifetime. To argue otherwise would lead one to the extreme absurdity of contending that, if Stinchcomb were to die immediately after the installation of

the line, the county would be obligated to dig it up. Moreover, the portion of the agreement which deals with the Fayette County lands has as its *terminus ad quem* neither a date certain nor the date of the death of the grantor. Rather, the termination of Stinchcomb's right to tap on to the sewer line is contingent upon the occurrence of an event which may occur, if at all, at some indeterminate time in the indefinite future: *"[A]s soon as* Fayette County provides a sanitary sewer line to serve such lands of the Grantor as may lie in Fayette County, . . . *then* the Grantor shall tap on to the Fayette County sewer system." (Emphasis supplied.)

If, as we now hold, the rights granted to the county were perpetual, so were the reciprocal rights conferred upon the grantor. The trial court erred in holding that the easement was only a personal covenant which did not inure to the grantor's heirs and assigns.

We would therefore remand this case for deletion of those portions of the court's order which erroneously limit appellant to only one tap-on for the lands lying in Fayette County, and which hold the covenant to be otherwise than perpetual; i.e., that it was a personal covenant which did not run with the land. We affirm the remainder of the judgment.

*Judgment affirmed in part and reversed in part; case remanded with direction. Pope, J., concurs. Pope, J., also concurs specially. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment and specially, with the following explanation.

The majority opinion states that: "The trial court further held that the easement was not an interest in the land or a covenant running with the land, but only a license, and was therefore only a collateral or personal covenant and not one that would inure to appellant's heirs or assigns." What the trial court held was: "That the easement granted, a copy of which is attached to Plaintiff's Complaint as amended, is not such an easement as runs with the land, and the Court further holds that the rights given Dan V. Stinchcomb, Grantor are personal rights as to him and do not extend to his heirs or assigns."

The only easement granted was that granted by Stinchcomb, to the Authority, as plainly shown by the document the trial court referred to; it is entitled "Sewer Easement." The only "Grantor" named in the document and signing it as "Grantor" was Stinchcomb. The trial court did not conclude that there was no easement to *Stinchcomb*, but that there was no easement to the *Authority*. In that, as argued by Stinchcomb, the court erred. The Authority as well as Stinchcomb and the majority, and I as well, agree that an easement

was granted to the Authority for the laying and maintenance of the sewer line. Stinchcomb chose to contest this conclusion of the trial court, in his enumeration of error number two, because he wanted then to go on and claim that his correlative right also extended beyond himself, to his assigns and heirs instead of being just personal to himself as grantor of the easement to the Authority. I would agree with Stinchcomb that that part of the court's ruling was in error.

The majority reads that conclusion as being one relating to Stinchcomb's rights, i.e., that the court was concluding that Stinchcomb did not have an easement.[1] But the court carefully referred to Stinchcomb's interest as "rights given"; these rights, if found, were personal only. Thus Stinchcomb's second enumeration of error is well taken.

Turning now to the third enumeration of error, it focuses on the trial court's ruling with respect to what Stinchcomb was given to exchange for the perpetual easement. The majority here recites that the trial court concluded that these rights were a "license," but I do not find in the court's order anything so designating what Stinchcomb received. Regardless of what it is called, however, what Stinchcomb wants to establish in the declaratory action he brought is that he as owner of the land through which the Authority's sewer line runs has the right to tap onto it to serve his Fayette property until Fayette provides a line to serve that property. What prompted the action was that when the sewer line was built, he requested tap-on for the Fayette property and the Authority refused, saying it was an ultra vires act for it to grant the right to Fayette residents to use Clayton sewer service. The trial court and we all agree that the grant by the Authority with respect to the right relating to the Fayette property was not ultra vires and that this right is limited to Stinchcomb personally.

What was said in *Dept. of Transp. v. Knight*, 238 Ga. 225, 228 (232 SE2d 72) (1977) about judicially construing deeds is true here: " 'In determining whether an instrument grants an easement in or conveys title to the land embraced therein, the crucial test is the intention of the parties, and the whole instrument must be looked to, and recitals in the instrument, subject matter, object, purpose, and nature of restrictions or limitations, if any, or the absence of such, and attendant facts and circumstances of the parties at the time of making the instrument are all to be considered. (Cits.)' "

The Authority wanted to construct and *perpetually* maintain a

---

[1] Of course, Stinchcomb could not have been granted an easement in exchange, because the nature of what he was granted was a right to tap into the sewer line, not a right to use land; the sewer line is personalty, which would become a fixture, not real estate. The Authority was granted the right to use Stinchcomb's land, in exchange for Stinchcomb's right to use the Authority's sewer line. Such a right was not therefore a right in *land*.

sewer line through Stinchcomb's property, so it negotiated with him and he agreed to grant the easement so the Authority could accomplish this purpose. In consideration, it gave him only $1 in money plus the right to tap onto the line from his property. Thus the tap-on right was the primary consideration. As to his Fayette property, the right would exist until Fayette provided a sewer line to serve the Fayette property. The need for the tap-on would obviously exist as long as there were residents on the property and Fayette did not provide the service. If, for example, Stinchcomb died the day after the line was finished and available for service to the Fayette property, the limited purpose of the agreement would be frustrated by a refusal to provide it and that part of the consideration for the grant of the perpetual easement would have no value. Or that if the tap-on for the Fayette property was made and Stinchcomb died or sold the property before Fayette installed a sewer line, use by the residents would have to cease. The event governing the conclusion of the right to service for the Fayette property, as expressly spelled out in the instrument, was not the death of Stinchcomb or devise of the property but rather access to sewer service from the other county. The right to this service was not to be "perpetual," as the easement was, but was limited to, in effect, the need for it.

The fact that the instrument, no doubt prepared by the Authority, did not specifically state that it was to "Grantor, his successor, or assigns" is not dispositive. As stated in *Featherston Mining Co. v. Young*, 118 Ga. 564 (1) (45 SE 414) (1903): "Under the Civil Code, Sec. 3083, (its successor is OCGA 44-6-2) the words 'heirs,' 'assigns,' 'successors,' are not necessary in order to convey the fee or to make the estate created by the instrument transmissible to subsequent purchasers." This is cited as authority in *Dept. of Transp. v. Knight*, supra, for the conclusion that "Neither does it matter that the grant was not both to successors *and assigns*." (Emphasis supplied.)

Considering the magnitude of the easement granted by Stinchcomb (45′ construction easement and 10′ permanent easement), the length of its duration (perpetual), the consideration he received for it (the right to use plus $1), the purpose of the right as related to the Fayette property, the fact that the Authority refused to recognize it at all and only later urged that if it existed it was personal, and the language of the instrument, it grants the right until Fayette provided a sanitary sewer line to serve the Fayette property. These factors support the conclusion that this is what the parties intended.

I am authorized to state that Judge Pope joins in this special concurrence.

Decided January 10, 1986 —
Rehearing denied January 24, 1986 — 

John L. Watson, Jr., for appellant.
G. Robert Oliver, for appellee.