A04A1977. MASSIH v. MULLING et al.
(610 SE2d 657)

MILLER, Judge.

William J. Massih, as executor of the estate of Kay M. Massih, appeals from the trial court's grant of summary judgment to Emory Mulling, The Mulling Companies, Inc., and Career Directions, Inc. d/b/a The Mulling Group (hereinafter collectively referred to as Mulling) on Kay Massih's breach of contract and tort claims. For the following reasons, we affirm.

To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. *Lau's*

*Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When reviewing the grant of a motion for summary judgment, this Court conducts a de novo review of the law and evidence. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in the light most favorable to the executor, the evidence showed that Kay Massih began working for The Mulling Group in 1993, providing outplacement services. In August 2000, Massih and Emory Mulling, chairman of the Mulling Companies, discussed starting a new outplacement service company with Massih as the president. In exchange for Massih becoming president, Emory Mulling initially offered Massih ten percent ownership of the new company, but the two later agreed after negotiations that Massih would own twenty percent and Emory Mulling eighty percent of the company, Career Directions, Inc. (CDI). Emory Mulling announced that Massih was assuming the role of president and partner.[1] On September 1, 2000, Massih became president of CDI. She also attended Lincolnshire International (an association of outplacement service providers) as an owner of CDI. Massih and Emory Mulling attempted to negotiate the terms of a shareholder agreement but never reached an accord.

In December 2001, Massih submitted her resignation after informing Emory Mulling that she wanted to become an independent broker of outplacement services who would still work closely with The Mulling Group. Following her departure from CDI and The Mulling Group, Massih sued, alleging breach of contract, fraud, unjust enrichment, violation of a confidential relationship, breach of fiduciary duty, and intentional infliction of emotional distress. She alleged that Mulling failed to transfer her 20 percent ownership interest in CDI upon her departure from the company. Mulling moved for summary judgment, but Massih died several days prior to the hearing on the motion. The trial court granted Mulling's motion for summary judgment, and the executor of Kay Massih's estate now appeals. He argues that the trial court erred in finding that Massih's ownership interest was too indefinite to enforce and in entering summary judgment on the remaining claims.

1. The executor argues that the trial court erred in concluding that the oral agreement between Massih and Emory Mulling was too indefinite to enforce. We disagree.

It is well settled that "[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid

---

[1] The announcement stated that Massih was the new president of The Mulling Group. CDI (d/b/a The Mulling Group) was incorporated on August 30, 2000, two days before Massih assumed office.

or proposition." OCGA § 13-3-2. Moreover, "[a] contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain. In addition, the party asserting the existence of a contract has the burden of proving its existence and its terms." (Punctuation and footnote omitted.) *Home Depot U. S. A. v. Miller*, 268 Ga. App. 742, 744 (1) (603 SE2d 80) (2004).

The executor argues that the proof of Massih's ownership was her participation in the Lincolnshire meetings and the submission of a tax form listing Massih as a 20 percent shareholder. Emory Mulling admitted that he allowed Massih to attend the Lincolnshire meetings even though he was aware that her attendance was improper, since only owners were permitted to attend. He further explained that because he planned on Massih becoming a part-owner at some point, he did not see the harm in allowing her to attend the meetings. Therefore, Massih's attendance at the Lincolnshire meetings is not necessarily indicative of ownership. Moreover, the tax form showing that Massih was a 20 percent shareholder was, at most, inconclusive as to her status, since the parties had not yet completed negotiations on the specifics of the shareholder agreement at the time the form was signed.

Massih herself admitted that although Emory Mulling had promised her a 20 percent ownership in CDI, there were several details about the ownership that were never resolved. The two did not discuss when Massih would receive her ownership interest or how CDI was to be structured. Under these circumstances, we agree with the trial court that the oral agreement was too indefinite to enforce. See *Razavi v. Shackelford*, 260 Ga. App. 603, 604-605 (1) (580 SE2d 253) (2003) (agreement was too vague to enforce where the parties did not discuss matters including the duration of the agreement and the time needed for each renovation); *Cherokee Falls Investments v. Smith*, 213 Ga. App. 603, 604-605 (1) (445 SE2d 572) (1994) (joint venture agreement that lacks certainty on essential terms is unenforceable). Even though Emory Mulling represented to others that Massih was a part-owner, the two had not agreed on all material terms. See *Burns v. Dees*, 252 Ga. App. 598, 601-602 (1) (a) (557 SE2d 32) (2001). "A court will not enforce an agreement where it is left to ascertain the intention of the parties by conjecture." (Citations omitted.) Id. at 602 (1) (a).

The trial court did not err in granting summary judgment to Mulling on the executor's breach of contract claim.

2. The executor argues that the trial court erred in granting summary judgment to Mulling on Massih's remaining claims. We disagree.

With respect to Massih's claim for intentional infliction of emotional distress, Massih makes no argument to support this claim

beyond the same set of facts that she alleges support her breach of contract and other claims. As we held in Division 1, however, the alleged contract here was too indefinite to enforce. Moreover, even if a contract had existed, not even a bad faith breach of the contract, let alone the mere breach alleged here, would support a claim for intentional infliction of emotional distress. See *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999). Massih's claim is without merit.

Similarly, Massih concedes that all of her other claims relate to the formation of the alleged contract and Mulling's failure to pay her the 20 percent share to which she claims she was entitled. Again, Massih has failed to provide evidence that she was entitled to any further payments from Mulling after she left the company. Indeed, the alleged promises were too indefinite to be enforced. These additional claims are therefore without merit. See *Burns*, supra, 252 Ga. App. at 606-607 (1) (b), (c).

Finally, since Massih cannot prevail on any of her claims, she is not entitled to any award of attorney fees. See *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (3) (543 SE2d 32) (2001) (party that does not prevail on any of its claims cannot obtain attorney fees); *Burns*, supra, 252 Ga. App. at 608 (1) (e).

The trial court properly granted summary judgment to Mulling on all of Massih's remaining claims.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 17, 2005.

*Romich & Associates, Keith B. Romich, Fisher & Phillips, F. Kytle Frye III*, for appellant.

*Kilpatrick Stockton, James H. Coil III, Christopher J. Kellner*, for appellees.