### A08A0578. GARDNER et al. v. MARCUM.
(665 SE2d 336)

MIKELL, Judge.

C. Rob Marcum sued Dan Gardner, Jay Steele, and DG Productions, LLC ("DGP") (collectively, the "defendants"), claiming that he was entitled to the return of $50,000 he had loaned to the defendants. The trial court initially granted summary judgment to the defendants, and we reversed on appeal in light of the unresolved factual conflicts as to the nature of the parties' transaction.[1] On remand, the trial court granted Marcum's motion for summary judgment.[2] The defendants appeal, claiming that the trial court erred because (i) Marcum either entered into a binding contract to invest

---

[19] *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004) (citation omitted).

[1] *Marcum v. Gardner*, 283 Ga. App. 453 (641 SE2d 678) (2007).

[2] The trial court also denied defendants' motion for summary judgment and Steele's motion to dismiss.

the money or was estopped by his promise to invest from demanding the money be returned, (ii) Gardner and Steele were not individually liable, (iii) material issues of fact remain as to whether the $50,000 was a loan or an investment, (iv) Gardner's manager had no authority to bind defendants to a revocable investment agreement, and (v) the trial court improperly considered arguments not within the four corners of Marcum's original complaint. For the reasons set forth below we affirm the grant of summary judgment against DGP. We reverse the grant of summary judgment against Gardner and Steele because Marcum has failed to establish as a matter of law that they are individually liable.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[3] Our review of the evidence is de novo.[4]

The pertinent facts are set forth in our previous decision:

> [I]n August 2003, Dennis Kurtz, the personal manager for Dan Gardner, a musician, approached Marcum regarding investing up to $150,000 in an album by Gardner. Marcum gave Kurtz a check for $50,000, made payable to "DG Productions, LLC," to be used for "producing, releasing, and promoting" Gardner's album. Marcum characterized the $50,000 as an "advance," stating that the

>> initial funds were to be used by Gardner solely for the production, release, and promotion of the album, conditioned on the satisfactory completion of negotiations of an agreement between Gardner and me. If an acceptable agreement was finalized guaranteeing to me some security interest in the album and a proper return on my investment, I expected to invest an additional $100,000.

> In an affidavit, Kurtz agreed that the $50,000 was an advance, referring to it as "a conditional investment," and stated that "the $50,000 advanced by Marcum, and any further investment by him, were expressly conditioned

---

[3] (Footnote omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See OCGA § 9-11-56.

[4] See *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002).

upon the completion of negotiations of an acceptable written contract between Gardner and Marcum." According to Kurtz, if the parties were unable to finalize a written agreement as to all terms, Marcum would not make any further investment and "Gardner would have to return Marcum's $50,000." Gardner, conversely, characterized the $50,000 as "partial payment" and "the first of three investment installments with the understanding that a formal written agreement would be negotiated."

The parties were unable to agree upon the terms of a formal written agreement. Marcum demanded that Gardner return the $50,000, but Gardner refused. Gardner maintains that although the money was used "to fund the production, marketing, and distribution of the project," the project ultimately was unsuccessful because Marcum failed to complete his investment. Marcum alleges that a portion of the $50,000 was spent on items unrelated to the production, promotion, and release of the album, including cosmetic dentistry and a personal computer.[5]

1. The defendants contend that the trial court erred in concluding that no contract was formed as a matter of law because the parties failed to assent to the terms. We disagree.

(a) Viewed in a light most favorable to defendants, the evidence shows that Marcum intended to invest $150,000 in Gardner's music project, and that Marcum tendered a $50,000 check payable to DGP to be used for the production, release, and promotion of the album. It is undisputed that the terms of the transaction had not been finalized when Marcum tendered the money. For instance, Gardner avers that the $50,000 represented the first of three investment installments, with a formal written agreement to be negotiated, but that after entering into negotiations the "parties were not able to agree to terms."

As a rule, "[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."[6] However, "a deferral of agreement on a nonessential

---

[5] (Footnote omitted.) *Marcum*, supra at 454-455. We also noted that, "[a]t Gardner's request, Kurtz told Marcum to make the check payable to DG Productions, LLC, a limited liability company owned solely by Gardner, ' "for tax purposes." ' The notes section of the check stated '1/3 investment on Dan Gardner.' " Id. at 454, n. 3.

[6] OCGA § 13-3-2.

term does not invalidate an otherwise valid contract."[7] Defendants acknowledge that terms of the agreement remained to be negotiated, but submit that such terms were not material and could be supplied in accordance with reasonable standards.[8] Defendants admit, however, that the parties never agreed on Marcum's rate of return on his investment. Also outstanding was the structure of the transaction, including whether Marcum was extending an unsecured loan or making an equity investment. These terms are inherently material as they would define the consideration for the investment,[9] and the provisions expressly remained for negotiations between the parties at the time the $50,000 was tendered. "It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties."[10] Under these circumstances, there was no assent by the parties to the essential terms of the contract, but only an unenforceable agreement to agree.[11]

(b) Defendants contend that even if there is no enforceable contract, they relied on Marcum's promise to invest to their detriment, and so Marcum's promise to invest is binding or, at a minimum, Marcum is estopped from demanding the return of the $50,000.

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.[12]

However, the defendants did not argue promissory estoppel in

---

[7] (Punctuation and footnote omitted.) *Miami Heights LT v. Home Depot U.S.A.*, 283 Ga. App. 779, 783 (1) (643 SE2d 1) (2007).

[8] See, e.g., *Puritan Mills v. Pickering Constr. Co.*, 152 Ga. App. 309, 310-311 (262 SE2d 586) (1979) (testimony of architect of general customs of architectural and construction practices in Atlanta was admissible to aid in contract construction).

[9] See *Bulloch South, Inc. v. Gosai*, 250 Ga. App. 170, 174 (1) (a) (550 SE2d 750) (2001) (absence of interest rate constituted a deficiency in the contract); *Denton v. Hogge*, 208 Ga. App. 734, 735 (2) (431 SE2d 728) (1993) (contract financing provision did not identify loan or its terms, and contract was too indefinite to be enforced); *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977) ("A promise to make a loan with no specification of the interest rate or maturity date is not enforceable") (citations omitted).

[10] (Citations, punctuation and emphasis omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 697 (446 SE2d 199) (1994).

[11] *Hartrampf v. C & S Realty Investors*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981) ("[u]nless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect") (citation and punctuation omitted).

[12] OCGA § 13-3-44 (a).

opposition to Marcum's motion for summary judgment. "We do not consider issues raised for the first time on appeal, because the trial court has not had [an] opportunity to consider them."[13]

2. Defendants also argue that the trial court erred in finding Gardner and Steele individually liable to repay the $50,000. We agree.

According to Kurtz, Marcum tendered the $50,000 on condition that the contract negotiations would be completed, and that otherwise the money would be returned to Marcum. There is no evidence that Marcum agreed to forfeit his money if negotiations failed. The $50,000 is analogous to a refundable deposit or earnest money, and Marcum is entitled to demand its return.[14] Nevertheless, we cannot conclude that the defendants are jointly and severally liable to repay the $50,000 as a matter of law.

Significantly, Marcum wrote the $50,000 check to the order of "DG Productions, LLC." Further, Gardner averred that "DGP used the funds . . . [for] the production, marketing and distribution" of the music project. Marcum contends that the only pertinent evidence, as shown by Marcum's and Kurtz's affidavits, was that Marcum intended to invest in Gardner personally and not DGP. He points out that written on the $50,000 check is "For 1/3 investment on Dan Gardner." Marcum also argues that the $50,000 came into the personal control of Gardner and Steele as part of a plan to "spend and not repay" while placing any liability on a company with no assets. Notwithstanding these arguments, the fact remains that Marcum paid the money to DGP, not to Gardner and Steele. As a rule, "[o]ne who deals with a corporation as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence for the purpose of holding the owner liable."[15] Gardner and Steele,[16] although they may be members of DGP, are not liable for DGP's obligations solely by reason of being members,[17] and "whether to

---

[13] (Citation and punctuation omitted.) *Dan J. Sheehan Co. v. Ceramic Technics*, 269 Ga. App. 773, 777 (3) (605 SE2d 375) (2004).

[14] See *Ali v. Aarabi*, 264 Ga. App. 64, 67 (589 SE2d 827) (2003) (purchaser entitled to refund of earnest money where financing contingency was not satisfied); *Scarborough v. Novak*, 92 Ga. App. 488, 489-490 (88 SE2d 800) (1955) (since sales contract was not sufficiently specific to be enforceable, broker could not retain buyer's earnest money); *State Hwy. Dept. &c. v. MacDougald Constr. Co.*, 54 Ga. App. 310 (187 SE 734) (1936) (no enforceable contract precluded bidder from return of its deposit). See also *Crowell v. Williams*, 273 Ga. App. 676, 677-678 (3) (615 SE2d 797) (2005) (seller could not rescind sales contract and also retain partial payments made by the buyer).

[15] (Punctuation and footnote omitted.) *Bulloch South*, supra at 176-177 (2).

[16] The evidence is conflicting as to whether Steele was or was not a member of DGP. But in any case, Marcum fails to establish Steele's liability as a matter of law.

[17] OCGA § 14-11-303 (a) ("[a] person who is a member, manager, agent, or employee of a limited liability company is not liable, solely by reason of being a member, manager, agent, or

pierce the corporate veil is normally a jury issue."[18] The undisputed facts fail to demonstrate that Gardner and Steele are individually liable as a matter of law to account for funds Marcum voluntarily paid to DGP. Accordingly, we conclude that while summary judgment against DGP must be affirmed, summary judgment against Gardner and Steele must be reversed.

3. Defendants' other arguments have no merit.

(a) The defendants claim that summary judgment is improper because issues of fact remain as to whether $50,000 was a "loan" or an "investment." In either case, there was no meeting of the minds as to the essential terms of the parties' contract, and so the result is the same.

(b) Defendants claim that the trial court erred in concluding that no issue of fact remained as to the scope of Kurtz's authority to negotiate for or bind the defendants to a "revocable" investment agreement. According to Gardner, he understood the money to be the first of three installments in an investment in his music project, via DGP, "and not a rescindable investment agreement if the particulars were not agreed upon immediately." But as Gardner's affidavit shows, he was aware that the terms of the transaction remained to be negotiated when Marcum tendered the $50,000, and, as we found in Division 1, supra, because the parties did not assent to these terms, no enforceable contract was formed. Even if Kurtz was not authorized to accept a conditional tender of the $50,000, defendants fail to show how their rejection of this arrangement leads to the forfeiture of Marcum's funds. Defendants have failed to show that any issue of fact as to the scope of Kurtz's authority is material.

(c) Defendants also contend that Marcum improperly changed his position "post judgment" to assert an absence of a contract between the parties because the original complaint asserted claims based only on repayment of a loan and on conversion. Defendants point out that a plaintiff may not amend his complaint to assert a new cause of action against the defendant after summary judgment has been granted in defendant's favor, and they argue that the trial court therefore erred in allowing Marcum to recast his argument in this case.[19] "Because summary judgment is an adjudication on the merits, once entered, a party is not free to amend its pleadings."[20] Here, however, there remained no adjudication on the merits after

---

employee of the limited liability company . . . for a debt, obligation, or liability of the limited liability company").

[18] *Bulloch South*, supra at 177 (2).

[19] See *P. P. G. Indus. v. Hayes Constr. Co.*, 162 Ga. App. 151, 152 (2) (290 SE2d 347) (1982).

[20] (Footnote omitted.) *McDaniel v. City of Griffin*, 281 Ga. App. 350, 352 (1) (636 SE2d 62) (2006).

we reversed the trial court's previous judgment. The defendants had notice of Marcum's claims,[21] opposed summary judgment on the merits of those claims, and did not assert any procedural bar below. Accordingly, we conclude that defendants' argument is without merit.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 20, 2008 —
RECONSIDERATION DENIED JULY 1, 2008 — ▮▮▮▮▮

*Hewitt & Rogers, Leron E. Rogers*, for appellants.
*Scott D. Sanders*, for appellee.

---

[21] See generally *Ahmad v. Excell Petroleum*, 276 Ga. App. 167, 169 (1) (623 SE2d 6) (2005) ("the basic premise behind the Civil Practice Act – to substitute 'notice pleading' for 'issue pleading' – means that the courts should not raise technical barriers that prevent pleadings from serving as a means of arriving at fair and just settlements of controversies between litigants") (citation omitted).