## A08A2142. HUNT v. THOMAS.
(675 SE2d 256)

MIKELL, Judge.

Godfrey Thomas sued his former son-in-law, Andrew J. Hunt, to recover $20,000 Thomas invested in real property that Hunt developed and sold. Thomas also sought attorney fees. Hunt filed an answer denying the debt and a counterclaim alleging, inter alia, breach of contract. The trial court granted summary judgment to Thomas on all issues except attorney fees. The parties stipulated to the submission of the issue of attorney fees by brief, and the trial court entered an order awarding fees to Thomas. Judgment was entered for Thomas in the total amount of $28,818.62 plus interest. Hunt appeals, challenging only the entry of judgment against him on his counterclaim and the trial court's failure to hold a hearing on the motion for partial summary judgment. We affirm. The relevant facts follow.

On February 1, 2008, Thomas filed a motion for partial summary judgment on the issue of Hunt's liability for the $20,000 debt and on the counterclaim. Thomas requested a hearing, but he withdrew the

request on February 28. On March 3, Hunt filed a response to Thomas's motion and a request for oral hearing. Without holding a hearing, the trial court issued an order on March 17 granting Thomas's motion and reserving the issue of attorney fees for a later hearing.

On April 28 the court entered an order stating that the parties had "agreed that *the only pending issue* in the above styled case is attorney fees and that same could be submitted to the court by briefs on or before May 9, 2008." Thomas filed a timely brief. Hunt filed a document entitled "Pretrial Information," stating that the trial court had granted partial summary judgment to Thomas; that both parties had filed briefs on the issue of attorney fees; and that a pretrial order had not been filed. Hunt did not respond to the question, "Is comprehensive pretrial hearing desired?" By order filed on May 15, 2008, the trial court granted attorney fees to Thomas in the amount of $8,818.62 pursuant to OCGA § 13-6-11, finding that Hunt had been stubbornly litigious and had caused Thomas unnecessary trouble and expense.

1. Hunt argues that the trial court's failure to hold a hearing on the motion for summary judgment constituted reversible error. Under the facts of this case, we disagree.

It is true that a party who files a timely written request for oral argument on a motion for summary judgment is absolutely entitled to one under Uniform Superior Court Rule 6.3.[1] "[W]hether oral argument is heard is within the power of the parties, and is not left to the discretion of the trial court. All a party need do is make a written request for oral argument and it shall be held."[2] And a court's error in failing to grant a hearing can never be held harmless.[3] But that is not the issue in the case at bar. The issue is whether the failure to hold the hearing can ever be waived by a party's conduct. We hold that it can under the circumstances presented here.

"It is axiomatic that at the appellate level one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing."[4] At no time between the entry of the

---

[1] *Bennett v. McDonald*, 238 Ga. App. 414, 415 (1) (518 SE2d 912) (1999) (reversed because court granted summary judgment even though hearing date had been set).

[2] (Citations omitted.) *Kelley v. First Franklin Financial Corp.*, 256 Ga. 622, 623-624 (351 SE2d 443) (1987); accord *Vincent v. Bunch*, 227 Ga. App. 480 (1) (489 SE2d 592) (1997) (reversed; court struck plaintiff's response to defendant's motion for partial summary judgment because it was one day late and granted motion without hearing oral argument).

[3] *Dixon v. McClain*, 204 Ga. App. 531-532 (1) (420 SE2d 66) (1992).

[4] (Citation and punctuation omitted.) *Mitchell v. Wyatt*, 192 Ga. App. 127, 129 (1) (384 SE2d 227) (1989). See also *Wallace v. Swift Spinning Mills*, 236 Ga. App. 613, 617 (2) (511 SE2d 904) (1999).

order granting partial summary judgment on March 17 and the entry of final judgment on May 15 did Hunt alert the court that it had failed to hold a hearing on the summary judgment motion. Hunt could have filed a motion for reconsideration, or at the very least, sent the court a letter objecting to the order on the ground that the court failed to hold the requested hearing.[5] Hunt could have responded on the pretrial information form that no hearing had been held. He took no such action. Instead, after the court issued its order granting partial summary judgment, Hunt stipulated that the only remaining issue in the case was attorney fees, and he expressly waived a hearing on such fees. Under these circumstances, we find that Hunt's silence and inaction resulted in a waiver of his right to complain on appeal that the trial court erred in failing to hold a hearing on the motion for partial summary judgment.[6]

2. Hunt contends that the trial court erred in granting summary judgment against him on his counterclaim for breach of contract, arguing that triable issues of fact remain on that claim.[7] We disagree.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[8]

After the movant discharges his burden, the nonmovant cannot rest on his pleadings, but instead must come forward with evidence establishing a triable issue.[9] We review de novo a trial court's grant of summary judgment.[10]

---

[5] See, e.g., *Landsberg v. Powell*, 278 Ga. App. 13, 16 (627 SE2d 922) (2006) (defendant wrote court asking that his motions to open default and motion for summary judgment be set down for hearing).

[6] See generally *Shaver v. Kawasaki Motors Corp., U.S.A.*, 273 Ga. App. 140, 141-142 (614 SE2d 240) (2005) (failure to complain of court's reference to letter not introduced into evidence waived error).

[7] The trial court also granted summary judgment in favor of Thomas on Hunt's claims for fraud, quantum meruit, theft, and ownership of a certain parcel of property. To the extent Hunt appeals from this portion of the court's ruling, he makes no argument. The appeal as to these claims is thus deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2). See *Harris Ins. Agency v. Tarene Farms, LLC*, 293 Ga. App. 430, 431, n. 1 (667 SE2d 200) (2008).

[8] (Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[9] Id.

[10] *Gardner v. Marcum*, 292 Ga. App. 369, 370 (665 SE2d 336) (2008).

Viewed in the light most favorable to Hunt, as the nonmovant, the record shows that the parties entered into various real estate transactions in Rabun County before Hunt and his wife, Monica Hunt, divorced. Hunt and Thomas and their respective wives would invest in property which Hunt would develop and sell. The parties never entered into a written agreement concerning their joint investments. Once Hunt decided to divorce his wife Monica, who is Thomas's stepdaughter, her mother, Vicki Thomas, sent an e-mail to Hunt on August 23, 2004, reviewing the Thomases' various investments with Hunt and asking him to "consider" various specific actions in order to conclude their business dealings. Mrs. Thomas proposed, among other things, that the Thomases purchase a house, known as the Prime Hill rental house, that Hunt was improving for his wife's grandmother. The proposal was to purchase the house, when completed, for the balance of the mortgage, or $71,000. In his reply, Hunt stated, "If you would like to purchase the rental house, it would help Monica and I a great deal. Hunt Construction will finish the house at no additional cost within a certain time period and it could then be rented, sold or lived in." Mrs. Thomas replied that "it seems we all agree" on Thomas purchasing the house for Monica's grandmother.

In his deposition, however, Hunt admitted that the offer was made by Mrs. Thomas before the family learned of Hunt's extramarital relationship and that the offer "never came to fruition" after the affair came to light. Thereafter, Hunt was awarded the Prime Hill house in the divorce agreement executed on February 28, 2005. Hunt further deposed that a "stop work order" was placed on the house, so he was unable to sell it to Thomas, and that after the divorce, he sold the house to a third party for $185,000. At that time, the mortgage had increased to over $160,000.

Thomas testified that he never committed to purchasing the Prime Hill house, but simply considered doing so as a way to help the Hunts through the divorce. After learning of Hunt's extramarital affair, Thomas had a change of heart about their business dealings.

The trial court ruled that Hunt's breach of contract claim was barred by a release executed by the parties concerning a different tract of land. Hunt correctly contends that the release does not affect the Prime Hill house, but this does not change the outcome. "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed."[11]

---

[11] (Citation and punctuation omitted.) *Gilbert v. City of Jackson*, 287 Ga. App. 326, 327 (1) (651 SE2d 461) (2007).

Hunt contends that the evidence creates a jury issue as to whether Thomas's offer, and Hunt's reliance thereon, constitutes a valid and binding contract. We disagree.

> A valid contract requires parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. If the parties have not agreed to an essential term, no meeting of the minds of the parties exists, and a valid and binding contract has not been formed.[12]

Furthermore, "[a]s a rule, the consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."[13] Finally, "[a] promise must be sufficiently definite as to both time and subject matter to be enforceable."[14] In the case at bar, the evidence shows that no contract was ever formed because no details were specified as to when the house would be completed, and furthermore, the terms of the purported contract changed. The e-mail communications were exchanged when the Hunts were still married and Mrs. Hunt had an interest in the house. After Hunt was awarded the house in the divorce settlement, Monica Hunt was divested of any interest therein. Moreover, Hunt increased the mortgage on the property from $71,000 to $160,000. Hunt thereafter sold the house to a third party. Under these circumstances, the evidence demonstrates only an unenforceable agreement to agree, not an assent by the parties to the essential terms of a contract.[15]

Even if it could be said that requisites of contract formation — offer and acceptance — were satisfied, Hunt's completion of the house was a condition precedent to Thomas's duty to perform. "A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. Until compliance with this condition precedent the contract is not enforceable."[16] A stop work order was placed on the house during the divorce proceedings, so that it could not be completed and sold to Thomas. Because the

---

[12] (Punctuation and footnotes omitted.) *King v. Comfort Living*, 287 Ga. App. 337, 339 (1) (651 SE2d 484) (2007).

[13] (Punctuation and footnote omitted.) *Gardner*, supra at 371 (1) (a).

[14] (Punctuation and footnote omitted.) *King*, supra.

[15] *Hartrampf v. C & S Realty Investors*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981) ("[u]nless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect") (citation and punctuation omitted).

[16] (Punctuation and footnote omitted.) *Grier v. Brogdon*, 234 Ga. App. 79, 80 (505 SE2d 512) (1998) (failure of financing contingency). See OCGA § 13-3-4.

510

house was not completed at the relevant time, Thomas's obligation to purchase never matured, and Hunt's claim for breach of contract damages in this regard fails as a matter of law.[17]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 9, 2009.

*Cummings & Dillard, Michael H. Cummings II,* for appellant. *Sanders, Smith & Ranck, Russell W. Smith,* for appellee.