A09A1814. HARMON v. INNOMED TECHNOLOGIES, INC. et al.

(709 SE2d 888)

PHIPPS, Presiding Judge.

Kevin C. Harmon appeals the grant of summary judgment against him in this lawsuit, wherein he claims ownership of certain intellectual property purchased by Innomed Technologies, Inc. We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party.[1] Because Harmon has demonstrated no reversible error, we affirm.

In 1996, Thomas J. Wood obtained a patent in connection with a nasal ventilation device he had invented. The patent was held by a company wholly owned by Wood. Years later, in late 1998, Wood met with Harmon to discuss the feasibility of getting the device "to market." In January 1999, the two executed an agreement, wherein Harmon and Wood contemplated developing a corporation, in which Harmon would acquire shares by contributing funds, and in which Wood would contribute patents procured for his inventions. Specifically, with respect to patents, the agreement stated: "All patents related to medical devices developed by Thomas J. Wood will be transferred into the name of the corporation that is to be formed."

The following month, February 1999, articles of incorporation were filed with the Georgia Secretary of State's Office. A business bank account was opened. Harmon began depositing money therein; and Wood began writing checks on that account. Beginning in about February and continuing through September 1999, Harmon's attorney repeatedly sent to Wood various corporate documents such as bylaws and a subscription agreement, with accompanying letters instructing Wood to sign and return them. Wood never did so. Instead, as Harmon deposed, Wood expressly told him by March 2000 that he was no longer interested in any business relationship. Communications between Harmon and Wood halted.

In September 2002, Harmon discovered that Wood had continued to develop a nasal ventilation device, which had been taken to market. In fact, Wood had applied for and obtained another patent; had applied for and obtained FDA approval to market the device; had entered a business relationship with his in-laws in connection with that device; and together with his in-laws and his in-laws' company, had entered into an asset purchase agreement with a company that later became Innomed. Assets purchased in accordance with that agreement included any associated trade name for the device(s), all trademarks, patents, patent applications, and patents pending, as well as "At Buyer's option, all Patent, and related technology

[1] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

pertaining to respiration and 'sleep apnea' both presently and which may be developed by any party hereto for a period of five (5) years from the date of the Closing."

Claiming that his 1999 agreement with Wood entitled him to at least some interest in the intellectual property underlying the nasal ventilation device, Harmon filed suit against several defendants, including Innomed. Moving for summary judgment, Innomed claimed that records at the United States Patent and Trademark Office showed an unbroken ownership path of the patent issued in 1996 from the company wholly owned by Wood to Innomed. Further, Innomed argued that Harmon had no ownership in the subject intellectual property because the 1999 agreement underlying Harmon's claim had no legal force, asserting it was a mere agreement to agree. In addition, Innomed raised the defense that it was a bona fide purchaser without notice that Harmon had any interest in the property.

Opposing Innomed's motion, Harmon asserted that his claim of ownership was premised upon his agreement with Wood in 1999. Harmon also claimed that he held equitable title to the intellectual property. And he countered that Innomed had failed to establish that it had no notice of his interest in the property. After a hearing, the trial court summarily granted Innomed's motion.

On appeal, Harmon enumerates two claims of error. He contends that the trial court erred in granting summary judgment "on grounds that [he] did not have equitable title to certain property created with his funds." Also, Harmon contends that the trial court erred in granting summary judgment "on grounds that [Innomed] was a bona fide purchaser without notice of Harmon's interest in certain property."

1. Harmon has failed to demonstrate any merit in his claim that he holds an "ownership interest," stemming from the 1999 agreement, in the intellectual property.

(a) As a preliminary matter, to the extent Harmon sought to enforce contractual rights, we agree with Innomed's argument asserted below that the agreement was unenforceable because it was a mere agreement to agree.

> It is well established that no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon

later by the parties to the contract, the contract is deemed an unenforceable "agreement to agree."[2]

(A)s a rule, the consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition. Finally, a promise must be sufficiently definite as to both time and subject matter to be enforceable.[3]

Here, the 1999 agreement was not an enforceable contract because, as a whole, it failed to establish essential terms. Among other things, the agreement failed to establish the amount of money due from Harmon. What is more, the terms that *were* specified within the agreement were tempered by alternatives and otherwise subject to unspecified future changes.

The agreement stated as its purpose: "[T]o establish $80,000.00 financing for the development of a corporation to be named 'Breathing Technologies Corporation' at the expense of Kevin C. Harmon in exchange for a 49% ownership of the corporation." And it set forth that there would be "three phases of financing"; that at those respective phases, Harmon would transfer to the corporation first $25,000, next $30,000, and finally $25,000; and that with each financial transfer, a percentage ownership of the corporation would be transferred to Harmon. But there was no time frame established for any of these funding phases; rather, the agreement provided, "These phases are a rough guideline and timetable of the funds to be dispersed." Even the funding amounts were not definite; the agreement allowed Harmon to unilaterally "stop purchasing interest in the corporation at any time." And as for Wood, the agreement failed to specify time frames during which he would transfer existing or future patents; and, the agreement failed to provide any limitation upon the time frame during which future patents related to medical devices developed by Wood would belong to the anticipated corporation.

Regarding the structure of the anticipated corporation, the agreement stated only that Harmon would be appointed as a vice president "with all of the benefits afforded other officers in the corporation" and that Wood would be given "opportunity to input on all major corporate decisions." And while the agreement provided

---

[2] *Hardnett v. Ogundele*, 291 Ga. App. 241, 243 (1) (661 SE2d 627) (2008) (citation and footnote omitted).

[3] *Hunt v. Thomas*, 296 Ga. App. 505, 509 (2) (675 SE2d 256) (2009) (punctuation and footnotes omitted).

that Harmon could purchase up to 49% of the corporation, the agreement did not expressly provide for the remaining ownership. At the end of the agreement was language: "This agreement may be revised at a later date to include conditions in the corporate by-laws, more detail, or other considerations."

Notably, no corporation named "Breathing Technologies Corporation" was ever formed; articles of incorporation for "Breathing Technologies of Georgia, Inc.," however, were filed with the Georgia Secretary of State. Harmon was listed therein as registered agent; Wood's name did not appear therein. It is undisputed that Wood never assigned any patent to any corporation as contemplated by the 1999 agreement; it is also undisputed that Wood never returned to Harmon or to Harmon's lawyer any signed subscription agreement. As Harmon concedes in his brief, "[w]ithout a signed subscription agreement from [Wood], the organization of Breathing Technologies was never completed."

"Under these circumstances, the evidence demonstrates only an unenforceable agreement to agree, not an assent by the parties to the essential terms of a contract."[4] An agreement that is "originally and inherently too indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words, or conduct of the parties."[5] Harmon's acts consistent with the agreement, however, did not cure the deficiencies so as to render the agreement an enforceable contract.[6] Notably, Harmon does not present any argu-

---

[4] *Hunt*, supra (footnote omitted); see *Massih v. Mulling*, 271 Ga. App. 685, 687 (1) (610 SE2d 657) (2005) (promise of 20 percent ownership interest in company unenforceable where parties had not agreed on when interest would be conveyed or how company was to be structured); *Key v. Naylor, Inc.*, 268 Ga. App. 419, 425 (3) (602 SE2d 192) (2004) (agreement to transfer 20 percent of stock unenforceable where agreement did not provide for when or if transfer was to be made, what stock was to be conveyed, and what the percentage related to); *Burns v. Dees*, 252 Ga. App. 598, 602-606 (1) (a) (i) (557 SE2d 32) (2001) (oral agreement giving party ⅓ interest in profits and ultimate sale of business venture was unenforceable because it lacked terms concerning allocation of costs and losses, frequency of payments, manner of calculating proceeds, and time of distribution); *Lemming v. Morgan*, 228 Ga. App. 763, 764 (1) (492 SE2d 742) (1997) (oral partnership contract obligating one party to transfer ½ interest in real property to other party "if and when" second party's tax problems subsided insufficiently definite to be enforced); *Demer v. Capital City Cable*, 190 Ga. App. 40, 42-43 (2) (378 SE2d 162) (1989) (agreement to transfer stock pursuant to an equity participation plan was unenforceable where party conceded that several provisions of plan remained to be determined, including which type and amount of stock party would receive); *Sierra Assoc. v. Continental Illinois Nat. Bank &c.*, 169 Ga. App. 784, 788-789 (1) (315 SE2d 250) (1984) (agreement setting out various options for future agreement was unenforceable, because it was merely an agreement to agree in the future on one of the options).

[5] *Pine Valley Apartments v. First State Bank*, 143 Ga. App. 242, 245 (237 SE2d 716) (1977) (citation and punctuation omitted).

[6] See *Tattersall Club Corp. v. White*, 232 Ga. App. 307, 310 (1) (b) (501 SE2d 851) (1998) ("part performance of [a] contract is sufficient to validate an otherwise vague and objectionable document, provided that the part performance itself relates to the contested clause") (punctuation and footnote omitted).

ment that the agreement constituted an enforceable contract.

(b) Harmon contends that the trial court erred by granting summary judgment to Innomed "on grounds that [he] did not have equitable title to certain property created with his funds."[7] Harmon has failed to demonstrate merit in this contention.

At the summary judgment hearing, as to this matter, Innomed's counsel argued that Harmon had failed to make the threshold showing — that a cognizable interest in the intellectual property had vested in Harmon. Innomed's counsel pointed out that Harmon's claim of ownership was premised upon the 1999 agreement, but that agreement failed as unenforceable. Therefore, Innomed's counsel stated, because Harmon had failed to otherwise demonstrate that any cognizable interest was "ever conveyed [to him] to start off with, there's no equitable right." Harmon's counsel conceded,"We're not trying to enforce this [agreement]." Nevertheless, he asserted, the agreement had given Harmon "equitable rights." Innomed's counsel countered, "There's no case law to support what he's saying."

Indeed, Harmon has cited this court to no supporting authority. Instead, he reasserts that "[he] owns part of the [intellectual property] because he paid for [it] in connection with the [1999 agreement]." But as we have held in Division 1 (a), and as Harmon seems to concede, the agreement was not enforceable as a contract.

In addition, Harmon asserts that "the language in the [1999 agreement] about assigning '[a]ll patents related to medical devices developed by Thomas J. Wood' is perfectly valid for conveying equitable title." Harmon has articulated no legal argument, however, demonstrating how equitable title was conveyed here — pursuant to an agreement that was unenforceable.[8]

The cases that Harmon cites are inapposite to the circumstances here. In each case, an implied trust was imposed over the property to which the claimant had demonstrated a cognizable interest.[9] As the

---

[7] This case was originally filed in this court. We transferred it to the Supreme Court of Georgia as an equity case falling within its exclusive jurisdiction. The Supreme Court determined that "this appeal does not invoke [the] Court's subject matter jurisdiction" and therefore returned the case to this court.

[8] For general propositions, Harmon cites *Bunting v. McDonnell Aircraft Corp.*, 522 SW2d 161 (Mo. 1975). Inapposite, that case provides no persuasive authority for his assertion. Id. (concerning patent assigned in connection with terms of employment contract).

[9] See *Whiten v. Murray*, 267 Ga. App. 417-418, 420 (2) (599 SE2d 346) (2004) (implied trust arose in favor of plaintiff, where her ownership claim rested upon an enforceable agreement to purchase the real property); *Padgett v. Collins*, 89 Ga. App. 769, 776-778 (2) (81 SE2d 309) (1954) (constructive trust arose over automobile for the benefit of employer, where employer's ownership claim stemmed from fact that the automobile was purchased with employer's funds that were *converted* by terminated employee); *Stimpson v. Rogers*, 23 F. Cas. 105 (D. Conn. 1859) (concerning a patent obtained by executor for invention of the testator and noting that what executor did was in trust for those to whom such property is given by the

Supreme Court of Georgia pointed out in its order transferring this case back to this court: "The trial court did not impose a constructive or implied trust. Moreover, even if it had, the imposition of that relief would have been merely ancillary to the trial court's resolution of the legal and factual issues involved below." Harmon has articulated no argument that the trial court erred by not imposing a constructive or implied trust. "We will not speculate or make arguments on [Harmon's] behalf; to do so would improperly change this court's role from disinterested decision-maker to appellate advocate."[10] Under these circumstances, Harmon's claim of equitable title fails.

2. Given our conclusions in Division 1,[11] we need not reach Harmon's contention that the trial court erred to the extent it determined that Innomed was a bona fide purchaser without notice of his interest in the intellectual property.

*Judgment affirmed. Miller, P. J., concurs. McFadden, J., concurs fully and specially.*

McFADDEN, Judge, concurring fully and specially.

I concur fully in the majority's opinion. I write to add that Harmon's equitable argument is not only foreclosed by the fact that he has not articulated a legal argument demonstrating how equitable title was conveyed pursuant to an unenforceable contract. It is also foreclosed by:

> [T]he first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

(Citations and punctuation omitted.) *Hopkins v. Virginia Highland Assoc.*, 247 Ga. App. 243, 249 (1) (541 SE2d 386) (2000). See also *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998); OCGA § 23-1-6.

---

will). Harmon also cites another inapposite case, *Kennedy v. Wright*, 676 FSupp. 888 (C.D. Ill. 1988) (where a company purchased in a bankruptcy proceedings "[a]ny and all patents or trademarks owned by" the bankrupt company, the purchasing company also obtained equitable title to patents held in the name of an individual who owned the company, which individual was determined to be the alter ego of the company and which individual treated the patents as if his business owned them).

[10] *Pierce v. State*, 251 Ga. App. 600, 605 (5) (554 SE2d 787) (2001) (footnote omitted).

[11] Supra.

DECIDED MARCH 30, 2011 —
RECONSIDERATION DENIED APRIL 14, 2011 — 

*Beal & Blitch, James D. Blitch IV*, for appellant.
*Conner & Jackson, Neal L. Conner, Jr., Hall, Booth, Smith & Slover, Anthony A. Rowell, Kevin A. Leipow*, for appellees.