**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 5, 2026**

# In the Court of Appeals of Georgia

A25A1544. A.D.A. et al. v. XYTEX CORPORATION et al.

RICKMAN, Presiding Judge.

Each of the appellants[1] in this case purchased sperm from Xytex Cryo International LTD, through its subsidiary, Xytex Corporation (collectively, "Xytex"), in an effort to conceive a child using assisted reproductive technology.[2] The subject sperm was procured from one of three donors, and Appellants allege that Xytex sold the sperm under false pretenses about the medical, psychological, and social history

---

[1] This appeal consists of four separate civil cases that were consolidated in the trial court. Appellants consist of 23 individuals, including A.D.A., G.G., S.K., E.K., J.M.R., J.R.R., L.S.F., K.L.K., M.J.S., M.M.H., R.D., P.J.H., L.S.E., K.E., S.L.H., A.H., M.R.H., S.J.H., L.S., A.M.C., A.D.H.J., G.P., and C.E.A. For ease of reference, they will be referred to collectively as "Appellants."

[2] Assisted reproductive technology may include artificial insemination, in vitro fertilization, and embryo transplantation.

of the donors; as a result, each Appellant has a child or an embryo that currently or potentially suffers from one or a variety of genetic abnormalities allegedly inherited from the sperm donor. In each of four different complaints, Appellants alleged 13 separate causes of action against Xytex, seeking both monetary damages and equitable relief. Xytex moved to dismiss the complaints, arguing that all of Appellants' claims were barred under Georgia law. Relying on *Norman v. Xytex Corp.*, 310 Ga. 127 (848 SE2d 835) (2020), the trial court granted Xytex's motions to dismiss, concluding that, as pled, each of Appellants' claims amounted to some variation of a claim for "wrongful birth" which, as a matter of public policy, is a claim not recognized in Georgia. Appellants argue that the trial court erred by dismissing their claims. For the reasons set forth below, we affirm.

We review de novo the order granting Xytex's motions to dismiss, accepting as true all allegations in Appellants' complaints and resolving all doubts in their favor. See *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 316 Ga. 701, 706(1) (888 SE2d 553) (2023). Nevertheless, the burden is on Appellants to establish error by the record. See *Levy v. Reiner*, 290 Ga. App. 471, 474(2) (659 SE2d 848) (2008).

So construed, the pertinent facts are as follows. Xytex sells human sperm for the purpose of aiding those seeking to have children using assisted reproductive technology. At the relevant times herein, Xytex's website advertised that it was "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that its donors' personal health and family history were carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention. Additionally, the website represented that Xytex's "FDA mandated screening and testing . . . ensures our donors' continued good health."

With respect to its screening process, Xytex's website touted that its "procedure for qualifying a donor was very intense and arduous, and generated voluminous medical, psychological, genetic and social information about donors and their families." The website further represented, among other things, that its applicants were enrolled in or had graduated from some of the country's premier universities and medical schools; were subjected to extensive interviews by trained counselors that were focused on the applicants' personality, behavior, and health; underwent a comprehensive physical exam for physical abnormalities and evidence

3

of infectious diseases; gave samples of semen, urine, and blood for laboratory analysis; submitted to repeated lab testing for infectious diseases and additional physical examinations every six months; and were required to update their medical history. Finally, Xytex's website indicated that the medical information provided by its potential donors was subject to a two-month long review process by its medical director, and that if at any point Xytex learned new information about a donor (either from the donor or from a recipient of his sperm) that was deemed "medically significant," the donor's profile would be updated and notice would be sent to the inseminating doctor and to any patient who used sperm from that donor.

The Appellants herein purchased sperm that had been procured from one of three donors – Donor #3116, Donor # 5444, and Donor #9623. The specific allegations related to each donor are set forth below.

(a) Donor #3116. Xytex published a profile of Donor #3116 which stated that he had an advanced educational degree; was a cytogeneticist; had an impressive health history; and did not have any genetic abnormalities. In truth, Donor #3116 did not possess an advanced degree and he was not a cytogeneticist; rather, he was a lab

technician with genetic abnormalities, including but not limited to Charcot-Marie-Tooth disease ("CMT").[3]

Appellants allege that had Xytex conducted a thorough examination, review, and investigation as promised by its website, it would have learned that Donor #3116's claims about his medical, educational, and family history were false. They further allege that Donor #3116 had hallmark visual presentations for CMT and that his genetic medical condition should have been apparent to Xytex while performing a reasonably careful qualifying procedure, both through the childhood and adult photographs in Xytex's possession, as well as through the ability to observe him during the application process.

Twenty-one of the named Appellants purchased sperm procured from Donor #3116, and his sperm resulted in the conception of ten children and at least two embryos from separate family units. Of those, four of the children have undergone genetic testing, have tested positive for CMT, and will require extensive treatment; three of the children have undergone genetic testing and have inherited the duplicative

---

[3] The complaint describes CMT as "a neurological condition characterized by distal muscle weakness and atrophy, sensory loss, and slow nerve conduction velocity."

gene that is associated with CMT; three of the children must undergo additional testing in order to determine whether they have any genetic abnormalities and/or diseases; and the embryos must undergo additional testing in order to determine whether they have inherited any genetic abnormalities and/or diseases.

(b) Donor #5444. Xytex published a profile of Donor #5444 which stated that he had an impressive health history and did not have any genetic abnormalities and/or conditions. In truth, Donor #5444 has genetic abnormalities and conditions, including symphalangism.[4]

Appellants allege that had Xytex conducted a thorough examination, review, and investigation as promised by its website, it would have learned that Donor #5444's claims about his medical and family history were false. Additionally, Appellants allege that Donor #5444 had hallmark visual presentations for symphalangism and that his genetic medical condition should have been apparent to Xytex while performing a reasonably careful qualifying procedure, both through the

---

[4] The complaint describes symphalangism as "a rare congenital difference characterized by stiffness of the digits and lack of motion in the affected finger(s). While symphalangism typically affects the fingers, other joints can also be affected and hearing loss due to fusion of the bones in the middle ear is also possible."

childhood and adult photographs in Xytex's possession, as well as through the ability to observe him during the application process.

One appellant purchased sperm procured from Donor #5444 and that appellant has a child who has since been diagnosed with genetic abnormalities and conditions, including symphalangism.

(c) Donor #9623. Xytex published a profile of Donor #9623 which stated that he possessed an IQ of 160; a bachelor's degree, a master's degree, and was working toward a Ph.D. in neuroscience engineering; a clean medical and mental health history; and no criminal record. In truth, Donor #9623 had only a single college degree that he obtained years after he began donating sperm; had been hospitalized for mental health reasons on more than one occasion prior to selling his sperm and was placed on full Social Security Disability for his mental illnesses; had been diagnosed with schizophrenia, narcissistic personality disorder, a drug-induced psychotic disorder, and significant grandiose delusions; and had a series of criminal arrests.

Appellants allege that the true facts about Donor #9623's educational, mental health, and criminal history were readily available to Xytex had it conducted a thorough examination, review, and investigation as promised by its website. They

allege further that one of Xytex's employees knowingly and willfully encouraged Donor #9623 to lie and/or greatly exaggerate his IQ and education, and that the donor was approved approximately two weeks after filling out the questionnaire, contrary to the claim on Xytex's website that the information provided by its applicants underwent a two-month review process by its medical director.

One appellant purchased sperm procured from Donor #9623 and that appellant now has a child who has an increased risk of developing schizophrenia.

Collectively, the four complaints, which are nearly identical in substance, assert claims of fraud, negligent misrepresentation, products liability (strict liability), products liability (negligent liability), breach of express warranty, breach of implied warranty, breach of contract, negligence, violation of the Georgia Fair Business Practices Act, false advertising, promissory estoppel and unjust enrichment; each complaint seeks, among other things, monetary damages, specific performance, and injunctive relief.[5] Appellants allege specifically that they relied to their detriment on Xytex's representations when choosing to purchase sperm procured from Donors

---

[5] Despite some of the children having been confirmed to have inherited genetic abnormalities from their respective donors, the complaints were filed solely in the names of and seek compensation only for the parents.

#3116, #5444, and #9623, and that Xytex acted negligently, recklessly, fraudulently, and with callous disregard for the safety of Appellants and their children and embryos conceived as a result of Xytex's misrepresentations. Appellants further allege that Xytex failed to timely disclose to them medically significant information about their respective donors once that information was learned, and that Xytex continues to withhold the truth about the hereditary disorders of the donors from other purchasers of their sperm.

Xytex moved to dismiss the complaints and in a single order, the trial court concluded that each of Appellants' claims, as pled, amounts to an improper claim for "wrongful birth" barred by Georgia law; consequently, the trial court granted Xytex's motions and dismissed all of Appellants' claims.[6] Appellants contend that the trial court committed error by doing so.

---

[6] Additionally, and alternatively, the trial court ruled that Appellants' claims for products liability (strict liability) failed because Xytex was a seller as opposed to a manufacturer of the sperm at issue; their claims for breach of implied warranty failed because semen is considered "human tissue" and thus explicitly excluded under the governing statute; and their claims for false advertising authorized only injunctive relief, not monetary damages, for which Appellants had not stated a claim. Our holding in this opinion renders it unnecessary for us to consider the trial court's alternative rulings on those claims.

All parties agree that this case is governed by *Norman*, 310 Ga. 127. In fact, *Norman* involved the same attorneys; sperm procured from one of the same donors; the same general factual allegations; and essentially the same causes of action lodged against Xytex.

In *Norman*, our Supreme Court examined prior precedent and reaffirmed that under Georgia law, "life can never amount to a legal injury." Id. at 132 (2) (b); see *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711, 718-19 (398 SE2d 557) (1990). Thus, the Court reiterated that unless and until a legislative change is made by the General Assembly, "wrongful birth" claims seeking damages "that depend on life as an injury" necessarily fail. See *Norman*, 310 Ga. at 133(2)(b).

Upon examining the complaint in that case,[7] the *Norman* Court held that allegations that the parents "would not have purchased sperm from [the donor] had Xytex revealed the true facts about the donor" was "a classic wrongful birth claim because the necessary and direct result of not buying [the donor's] sperm is that [the

---

[7] The *Norman* complaint, just as the complaint in this case, was filed exclusively in the names of the parents on their own behalf, not on behalf of their children. See *Norman*, 310 Ga. at 135(2)(c), n.8. The Court reserved the question of whether and to what extent the parents in their own right could recover damages for pre-birth torts committed by Xytex. See id. In light of our holding *infra*, we, likewise, need not reach that issue.

child] would not exist." Id. at 135(2)(d). Thus, the Court declared that any such claim was barred under Georgia law. See id.

Nevertheless, the *Norman* Court announced that Georgia's prohibition on wrongful birth claims does not create a blanket immunity for reproductive service providers, and acknowledged that the appellants in that case may have adequately pled claims for relief that did not derive injury from their child's life.[8] See id. at 136(2)(d). But significantly, despite acknowledging that a claim for recoverable damages was conceivable, the *Norman* Court expressly declined to undertake the task of evaluating the complaint on a claim-by-claim basis. See id. at 135(2)(c), n.9. Instead, the Court declared that "the nature of the Normans' complaint makes … parsing [of the claims] difficult," in part because "each cause of action purports to incorporate by reference

---

[8] The Court stated, for example, that the parents could conceivably introduce evidence that they relied on Xytex's representation in failing to obtain a diagnosis or treatment sooner for some of their child's conditions, that the delays may have exacerbated pain or other symptoms suffered by the child that could have been avoided or mitigated had they known the truth of the donor's history, and that the parents may have incurred additional expenses as a result of not being told the truth sooner. Id. at 136-137(2)(d). Additionally, the Court recognized that damages may be recoverable under the Fair Business Practices Act, OCGA § 10-1-390 et seq., based on allegations that Xytex misrepresented the quality of its good and services. Id. at 137(2)(e). And finally, the Court allowed for a potential recovery of the difference between the cost of the sperm they received and the fair market value of the sperm Xytex represented they were getting. Id. at 137(2)(d).

all previous paragraphs of the complaint." Id. Thus, the Court remanded the case to the trial court so that the parties could analyze and brief the individual claims set forth in the complaint with the benefit of the legal principles set forth in the opinion. See id.

In contrast to the appellants in *Norman*, the parties – or more aptly put, the attorneys – in the instant case had the benefit of the *Norman* opinion when the underlying complaints were filed. But despite *Norman*'s clear admonition against allegations that a parent "would not have purchased sperm from [a donor] had Xytex revealed the true facts about the donor" – the prohibited wrongful birth claim – each and every individual cause of action in Appellants' complaints either includes or incorporates that very allegation. It was for that reason that the trial court concluded that all of Appellants' claims were barred.

Appellants assert that the trial court erred by dismissing their claims, contending that *Norman* definitively established that "some of the damages sought . . . would not require a recognition of the child's life as an injury." But beyond that summary assertion, Appellants do not argue, much less demonstrate, which of their 13 causes of action survive or why. Indeed, at no point – neither in the trial court nor

in this Court – have Appellants set out the elements of any individual claim that would survive post-*Norman*, explained the calculation of damages under that claim, or presented meaningful discussion as to how those damages could be recoverable under *Norman*. These deficiencies have been pointed out by Xytex in both the trial court and this Court, as Xytex has articulated the reasons why it contends that each of Appellants' claims fail on a claim by claim basis.

This Court has no duty – or even right – to speculate or make arguments on Appellants' behalf; were we to do so, we would be abandoning our role as neutral adjudicators and becoming Appellants' advocate. See *Harmon v. Innomed Technologies, Inc.*, 309 Ga. App. 265, 270(1)(b) (709 SE2d 888) (2011) ("We will not speculate or make arguments on [a party's] behalf; to do so would improperly change this [C]ourt's role from disinterested decision-maker to appellate advocate." (punctuation omitted)); see also *DeKalb County School Dist. v. DeKalb Agric. Tech. and Env't, Inc.*, 369 Ga. App. 829, 834(3) (894 SE2d 646) (2023) ("[I]t is not this [C]ourt's role to speculate about the legal basis for an appellant's argument, and mere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)). This is particularly true in a case such as this, where the

science and technology involved in assisted reproduction has advanced more quickly than the laws regulating its procedures and, consequently, the issues raised by this litigation are not only complicated, but novel.

So yes . . . the *Norman* Court acknowledged that it is possible to state a claim for recoverable damages under these facts. But it also identified and reiterated the prohibited language of that complaint and directed the parties to apply the legal principles of the opinion to their various causes of action. Appellants' failure to take heed of the Court's admonition against using the wrongful birth language in the instant complaints resulted in an adverse ruling from the trial court. And their continued failure to otherwise apply the *Norman* principles to the individual claims asserted results in our affirmance of the trial court's order and judgment. Simply put, the burden is on Appellants to demonstrate their allegations of error by the record, and this they have not done.

*Judgment affirmed. Gobeil and Davis, JJ., concur.*