A00A1101, A00A1102. HOPKINS v. VIRGINIA HIGHLAND ASSOCIATES, L.P. et al.; and vice versa.
(541 SE2d 386)

SMITH, Presiding Judge.

The central issue in these appeals is whether Jerry Hopkins purchased his property with notice of a sewer easement in favor of Virginia Highland Associates, L.P. and Stuart Meddin as general partner of Virginia Highland Associates (hereinafter referred to as "Meddin").[1] On motion for summary judgment, the trial court concluded as a matter of law that an easement existed, of which Hopkins was on notice when he purchased the property. The trial court further concluded Meddin's improper maintenance of the sewer constituted a nuisance. All parties appeal from these rulings. Because we conclude that several genuine issues of material fact exist, particularly as to whether Hopkins purchased the property with notice of

---

[8] *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 416 (532 SE2d 122) (2000).

[1] These appeals were transferred here from the Supreme Court on the grounds that any equitable issues were ancillary to the central legal issue of Meddin's claim to an easement over Hopkins's property and that the appeal did not fall within that Court's title to land jurisdiction.

the easement, we reverse.

These cases arose after residential property owned by Hopkins began experiencing sewer problems. Hopkins's property abutted Meddin's property, which consisted of restaurant and retail businesses. In August 1997, Hopkins notified Meddin that he had discovered sewer line connections to his property from at least three restaurants and that these restaurants were dumping grease and other items through the sewer system. Believing these to be illegal sewer connections, Hopkins asked Meddin to produce documentation showing access to the property or terminate the sewer connection. After Hopkins and Meddin unsuccessfully attempted to resolve any dispute as to repair of the sewer line, Hopkins threatened to terminate the connection. Meddin filed a petition for declaratory and injunctive relief seeking, among other things, a declaration that he had obtained an easement on Hopkins's property and that any interference with the easement constituted a private nuisance. The trial court granted temporary injunctive relief, enjoining Hopkins from interfering with Meddin's use of the sewer line. Hopkins answered and counterclaimed, alleging that operation of the sewer line constituted a trespass and a nuisance. He also sought bad faith penalties.

Following the parties' subsequent motions for summary judgment and partial summary judgment, the trial court entered an order concluding as a matter of law that Meddin had a valid easement for the sewer line by virtue of a July 1988 letter to him from Hopkins's predecessor in title, Gerald Hogan. The trial court found that the letter constituted a license that "thereafter became irrevocable due to subsequent expenditure" under OCGA § 44-9-4. Alternatively, according to the trial court's order, Meddin obtained a parol license that could be construed as an easement running with the land after Meddin, acting pursuant to the license, incurred expenses of approximately $9,000 during an uninterrupted ten-year period of use. The trial court further concluded that Hopkins had notice of the easement when he purchased his property. The court found that Hopkins was entitled to a trial on damages on his nuisance claim, but because the court found that a valid easement existed, it concluded that Hopkins could not maintain a trespass claim.

1. In Case No. A00A1101, Hopkins contends the trial court erroneously found that a valid easement existed and that Hopkins was on notice of the easement when he purchased his property.

The trial court correctly concluded that Meddin obtained an easement running with the land. In the July 1988 letter, Hogan, Hopkins's predecessor in title, gave permission to Meddin to cross his property with Meddin's sewer line in order to connect with the City of Atlanta system, provided Meddin met certain conditions. Among other things, Meddin was to correct a fresh water storm drain prob-

lem on Hogan's property. Meddin indicated acceptance of the terms by signing and returning a copy of the letter. Hogan's signature also appears on the letter, and the letter appears to have been notarized. In an affidavit filed in support of his motion for summary judgment, Meddin testified that he agreed to allow the sewer line from Hogan's property to "tie into" the new line to be constructed by Meddin, although this agreement was not included in the July 1988 letter. In his affidavit, Meddin testified that the agreement to provide this "tap" was reached while construction was occurring. The July 1988 letter was filed with the Fulton County Clerk's Office on July 14, 1988,[2] although it is undisputed that this copy was misindexed.[3]

Even though the copy of the 1988 letter from Hogan to Meddin was improperly indexed in the clerk's office, the record shows, at the very least, that Meddin obtained a parol license to construct a sewer line through Hogan's property.[4] And acting on this permission, Meddin expended in excess of $9,000 in construction expenses. While a parol license generally is revocable at any time, it "is not revocable when the licensee has executed it and in so doing has incurred expense. In such case it becomes an easement running with the land." (Citations and punctuation omitted.) *Bell Indus. v. Jones*, 220 Ga. 684, 686 (141 SE2d 533) (1965). See also OCGA § 44-9-4; *Waters v. Pervis*, 153 Ga. App. 71 (264 SE2d 551) (1980).

Our conclusion that Meddin acquired an easement running with the land does not end our inquiry, however. For the verbal agreement between Hogan and Meddin to have been effective against subsequent purchasers, the record must show that any such purchaser "took with notice of the agreement." *Meadows v. Page*, 187 Ga. 686, 689 (1) (1 SE2d 656) (1939). See also *Rome Gas-Light Co. v. Meyerhardt*, 61 Ga. 287 (1878). The trial court concluded that Hopkins

> was on notice that an easement existed in that [Hopkins] was on inquiry notice due to the " 'unusual' " box that was

---

[2] We note that Meddin testified in his affidavit in support of his motion for summary judgment that he presented a copy of the letter for filing on July 14, 1998, but the date stamp on the copy attached to Meddin's affidavit shows that it was filed on July 14, 1988.

[3] In an affidavit submitted in response to Meddin's motion for summary judgment, a real estate attorney who "examined and reexamined the Grantor and Grantee Indexes of Fulton County" for the period beginning January 1, 1988, and ending December 31, 1988, found that the Grantor Index did not contain a listing for an easement from Hogan to Meddin. The witness concluded that the recording clerk apparently indexed the letter by two methods: from Stuart Meddin to Stuart Meddin and from Turner Broadcasting System, Inc. to Stuart Meddin.

[4] "[A] license . . . confers a . . . privilege to do some act or acts on the land without possessing any estate therein." *Barton v. Gammell*, 143 Ga. App. 291, 293 (2) (a) (238 SE2d 445) (1977). Further, a license " 'is a mere permissive use, generally in parol and revocable.' " Id.

attached to his sewer. He was also on record notice since the letter granting the easement was filed, though improperly indexed through no fault of the Plaintiffs. Further, [Hopkins] had constructive notice since the existence of the sewer line could have been determined upon reasonably prudent investigation.

The grant of summary judgment is appropriate only after the movant has established "that no issues of material fact remain to be tried and the undisputed facts, viewed in the light most favorable to the non-movant, warrant judgment as a matter of law. [Cit.]" *Terry v. Collins*, 230 Ga. App. 646, 647 (497 SE2d 395) (1998). Here, contrary to the trial court's conclusion and Meddin's arguments on appeal, we conclude that the facts do not warrant a ruling, as a matter of law, that Hopkins was on notice of the easement.

As for the "unusual box" mentioned in the trial court's order, Meddin testified by affidavit in the trial court that "[a] water-meter type cast-iron box designated 'Sanitary Sewer Clean Out' is located in the driveway in such a way that it is obvious upon visual inspection that an unusual condition exists as to the location and type of sewer line which serves" Hopkins's property. But, in our view, whether this "box" should have placed Hopkins on notice of any unusual condition or whether the sewer line could have been discovered upon reasonable and prudent investigation are inherently questions of fact for the jury to decide. See generally *Rome Gas-Light*, supra. This is not a case such as *Webster v. Snapping Shoals Elec. Membership Corp.*, 176 Ga. App. 265, 266-267 (335 SE2d 637) (1985), in which the purchaser admitted she had notice of utility poles, and we concluded that visible utility poles were sufficient to put the purchaser on notice of the existence of an easement as a matter of law. Unlike the clearly visible conditions showing an easement in *Webster*, the sewer line was hidden from view, and Meddin's affidavit simply offered his nonexpert opinion as to one of the ultimate issues in the case. We cannot say that Meddin has shown that any metal "box" was of such a size or was so unusual as to place a purchaser on notice, as a matter of law, of the presence of a sewer line easement. For example, while the "unusual box" might have placed a property owner on notice of the existence of a sewer line on his own property, it is at least a question of fact as to whether this box indicated the presence of a sewer line running from another's commercial establishment or merely an additional "clean out" access on his own sewer line.

Nor can we agree that the misfiled July 1988 letter constituted record notice to Hopkins as a matter of law. Assuming, as argued by Meddin, the letter created an express easement granted by Hogan to

Meddin, that easement is subject to the rules governing the construction of deeds. *Barton*, supra, 143 Ga. App. at 293 (2) (a). A deed, among other things, must be "attested by at least two witnesses." OCGA § 44-5-30. Even if an improperly attested deed may be valid and binding between the parties themselves, "[a] deed not executed in precisely the manner prescribed in OCGA § 44-5-30 is not properly recordable and therefore does not give constructive notice to all the world. [Cit.]" *Duncan v. Ball*, 172 Ga. App. 750, 752 (2) (324 SE2d 477) (1984). As stated in *Coniff v. Hunnicutt*, 157 Ga. 823, 836 (1) (122 SE 694) (1924), "[t]he registry of a deed, not attested, proved, or acknowledged according to law, is not constructive notice to a subsequent bona fide purchaser. [Cits.]" Compare *Leeds Bldg. Products v. Sears Mtg. Corp.*, 267 Ga. 300, 301-302 (477 SE2d 565) (1996) (holding that deed that facially complies with statutory requirements is constructive notice but reaffirming rule that patently defective deed not constructive notice to subsequent purchasers).

While the July 1988 letter contained the signatures of the parties, Meddin and Hogan, as well as the acknowledgment required by OCGA § 44-5-30, the record before us does not show that it was attested by two witnesses. The copy of the letter attached to Meddin's complaint shows these signatures of the parties and the acknowledgment, without any other signatures. Inexplicably, the copy of the letter submitted by Meddin supporting his motion for summary judgment contains a third person's signature under which appears the word "witness." But whether the letter contained no signature of an additional attesting witness or contained one such signature, it is not clear as a matter of law that the letter comported with OCGA § 44-5-30 requiring the attestation of two witnesses. See OCGA § 44-2-21 (b) (one of two required attesting witnesses may be notary public). Accordingly, we cannot say, as a matter of law, that the letter served as constructive notice to Hopkins of the agreement.

We note that in the trial court, Meddin submitted the affidavit of an attorney, along with copies of two warranty deeds concerning the property. Those deeds recite that they are subject to "all easements and restrictions of record" and to "covenants, restrictions, [and] easements of record." In the affidavit, a real estate attorney testified that on behalf of a buyer, he "would as a matter of due diligence . . . inquire regarding the intent and purpose of this language." Just as we cannot conclude that the "unusual box" on Hopkins's property placed him on notice of the easement as a matter of law, we cannot conclude that this evidence served as such notice to Hopkins. Even assuming that the language in the warranty deeds should have prompted research as to the existence of the easement, whether the misfiled July 1988 letter could have been found upon due diligence is a question of fact, and even if found, as discussed above, issues exist

as to the validity of the letter as a recordable deed.

Meddin advances other bases for affirming the trial court's ruling that a valid easement existed and that Hopkins had notice of it, citing the "right for any reason" rule. See, e.g., *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Limited Partnership*, 265 Ga. 645, 647 (458 SE2d 632) (1995). He first contends that he obtained a prescriptive easement under OCGA §§ 44-5-161 and 44-9-1. But even assuming, without deciding, that such an easement existed, the property purchased by Hopkins would be burdened by the easement only if he purchased it with notice of the easement.

> Though a bona fide purchaser from the grantor without knowledge or constructive notice of the existence of the easement would take title free from the easement, and he may assume that there is no easement except as shown of record or by open and visible indications on the land itself, such purchaser will be charged with notice of the easement where an inspection of the premises would have readily revealed such physical facts as would, in the exercise of ordinary diligence, put him upon inquiry. [Cits.]

*Burk v. Tyrrell*, 212 Ga. 239, 243 (3) (91 SE2d 744) (1956). As discussed above, whether Hopkins was placed on inquiry as to the existence of an easement cannot be summarily resolved as a matter of law. *Simpson v. Colonial Pipeline Co.*, 269 Ga. 520 (499 SE2d 634) (1998) is not controlling on this issue, as some evidence in that case obviously showed that the existence of a 75-foot-wide pipeline right-of-way was ascertainable by visual inspection because the appellee had "at all relevant times inspected, cleared, and marked its right of way." Id. at 521 (2).

We note Meddin's reliance on *Stinchcomb v. Clayton County Water Auth.*, 177 Ga. App. 558 (340 SE2d 217) (1986), which, as stated by Meddin, discusses "a sewer line in terms of necessity." But contrary to Meddin's argument that the sewer line across Hopkins's property was necessary "to obtain gravity flow access," no such evidence was presented to the trial court. Similarly, *Eagle Glen Unit Owners Assn. v. Lee*, 237 Ga. App. 240 (514 SE2d 40) (1999), cited by Meddin, is inapplicable here, as a showing was made in that case that the easement at issue was the sole means of accessing the appellees' property. Id. at 243.

Meddin also maintains the trial court's order should be affirmed on equitable principles, arguing generally that the sewer line has become part of the city's public utility system. But *Orford v. City Council of Augusta*, 167 Ga. 865 (147 SE 63) (1929), cited by Meddin, addresses a different issue from that presented here: the power of a

private landowner to interfere with a sewer line placed, as a health measure, across the landowner's property by a city. We also note Meddin's argument that Hopkins was not harmed by the placement of the sewer line. But evidence, although contradicted, was presented below belying this argument.

Finally,

> the first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

(Citations and punctuation omitted.) *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998). Our law provides that property is not burdened by an easement when a subsequent bona fide purchaser takes without notice of the easement. Consequently, we are not bound by the equitable principles relied on by Meddin. Because questions of fact exist as to whether Hopkins purchased his property with notice of any easement, we must reverse the trial court's ruling that he had such notice as a matter of law. And because we conclude that genuine issues of fact exist as to whether Hopkins's property is burdened by the easement, we must also reverse the trial court's ruling concerning Hopkins's trespass claim.

2. In Case No. A00A1102, Meddin appeals from the trial court's ruling that its operation of the sewer line constituted a nuisance. But questions of fact exist as to whether the sewer line was operated in such a way as to cause harm to Hopkins's residential property. Meddin testified by affidavit that his plumber investigated the line running between his property and the City of Atlanta trunk line and found no blockage. The plumber also testified by affidavit that he found no evidence of a previous blockage and that he "observed a normal working sewer which had no abnormal scaling or build-up on the walls of the pipe based upon its age."

Hopkins, however, also presented evidence showing that blockages originating from the use of Meddin's commercial property did cause harm to and interfere with the use of Hopkins's property. For example, Hopkins testified by affidavit that the property experienced six backups during the first seven months of 1997 and that periodically, generally on weekends, he had "been forced to dredge through ankle-deep waste water, filled with grease, food remnants, feminine hygiene products, used toilet paper, and human feces." He testified that at first, not knowing about the sewer easement, he believed the

backups may have been caused by deposits left from prior use of the property but that he later learned that commercial properties were connected to his line. Upon making this discovery, he dropped dye into the toilets at these establishments and watched for this dye in the sewer clean-out opening on his property. According to Hopkins, "[t]his test confirmed that at least three of the restaurants were running sewage through the line tied to [his] home." He also stated that although Meddin's plumber inspected the pipe and found no problems, the plumber did discover "a heavy amount of grease in the pipe." And Hopkins stated that he once "discovered a grease clog . . . that was so large that the workers had to chisel [it] into pieces before it would wash down the sewer line" and that each instance of overflow was caused by "grease clogs in the line." This was at least some evidence showing that operation of the line connected to Meddin's commercial properties caused backups onto Hopkins's property.

Our law is well settled that only when the "facts conclusively show by plain, palpable and undisputed evidence that one or the other party is entitled to judgment that the case properly may be resolved as a matter of law through the vehicle of summary judgment." (Citations and punctuation omitted.) *Godwin v. Johnson*, 197 Ga. App. 829, 831 (1) (399 SE2d 581) (1990). The facts here are not "plain, palpable and undisputed" that the maintenance of the sewer line connecting Meddin's property to the city line did or did not cause harm to Hopkins's property. The trial court consequently erred in granting summary judgment on Hopkins's nuisance claim. We therefore reverse on this ground as well.

*Judgment reversed. Johnson, C. J., and Phipps, J., concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration Meddin contends that under *Leeds Bldg. Products v. Sears Mtg. Corp.*, 267 Ga. 300 (477 SE2d 565) (1996), once accepted by the clerk for recordation, the July 1988 letter constituted constructive notice of the easement.[5] In *Leeds*, the Supreme Court of Georgia did state unequivocally that in the absence of fraud, a deed that complies on its face "with all statutory requirements is entitled to be recorded, and once accepted and filed with the clerk of court for record, provides constructive notice to the world of its existence." Id. at 302. Security deeds in *Leeds* were improperly attested or acknowledged because the person whose signature ap-

---

[5] To the extent that Meddin argues that the July 1988 letter constituted an express easement, such easements are subject to rules concerning validity and construction of deeds. See Pindar, Ga. Real Estate Law, § 8-17 (5th ed.); *Barton v. Gammell*, 143 Ga. App. 291, 293 (2) (a) (238 SE2d 445) (1977).

peared as an unofficial witness to the instruments did not actually observe execution of the documents. Id. at 300. This improper attestation was not apparent on the face of the deeds. But a distinction exists between *Leeds* and this case: The record here does not show as a matter of law that the July 1988 letter, *on its face*, complied with OCGA § 44-5-30.

In a footnote in his motion for reconsideration, Meddin also contends that under OCGA § 44-2-20, the July 1988 letter "served the same function as an affidavit affecting title." OCGA § 44-2-20 (a) provides that "[r]ecorded affidavits shall be notice of the facts therein recited . . . where such affidavits show" any of several enumerated facts. Subsection (c) recites that these affidavits *"shall* contain a caption referring to the current owner and to a deed or other recorded instrument in the chain of title of the affected land." (Emphasis supplied.) This Code section must be strictly construed. *Dollar v. Thompson*, 212 Ga. 831, 834 (96 SE2d 493) (1957). No such caption appears in the recorded letter from Hogan to Meddin in this case. Accordingly, we cannot conclude that the letter served as notice to the world of the existence of an easement.

*Motion for reconsideration denied.*

DECIDED SEPTEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 11, 2000 — 

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, Derek W. Johanson, Wagner, Johnston & Rosenthal, Kristofer R. Schleicher,* for appellant.

*Maddox, Nix, Bowman & Zoeckler, Thomas A. Bowman, Robert L. Zoeckler,* for appellees.