**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 28, 2017**

# In the Court of Appeals of Georgia

A17A1065. SHOENTHAL et al. v. DEKALB COUNTY SE-040 EMPLOYEES RETIREMENT SYSTEM PENSION BOARD et al.

SELF, Judge.

In the third appearance of this case before this Court,[1] Rachel and Rebecca Shoenthal (collectively "Plaintiffs"), daughters of the late Judge Elliott Shoenthal, contend that the trial court erred in awarding attorney fees to the DeKalb County Employees Retirement System Pension Board ("the Board") pursuant to OCGA § 9-15-14. We agree and reverse.

The underlying facts as set out in *Shoenthal v. Shoenthal*, 337 Ga. App. 515 (788 SE2d 116) (2016) (hereinafter "*Shoenthal II*") are:

---

[1] See *Shoenthal v. Shoenthal*, 337 Ga. App. 515 (788 SE2d 116) (2016); *Shoenthal v. Shoenthal*, 333 Ga. App. 729 (776 SE2d 663) (2015) (appeal dismissed because not based on final order).

On October 25, 2013, about a month before his scheduled surgery, Judge Shoenthal changed the beneficiaries on employer-provided life insurance policies by reducing [his wife Fran's] share of the benefit from 100 percent to 50 percent and designating that each of the Plaintiffs receive 25 percent of the benefit. On the morning of November 18, 2013, Judge Shoenthal e-mailed the clerk of the Board, inquiring about changing the beneficiaries on his pension plan. Specifically, Judge Shoenthal asked, "[w]hat happens to my pension if I die – does it go to my wife? Can I split it between my wife and my children? Second, if I'm able to split it, what do I need to do to modify the beneficiary?" The clerk responded on November 20, 2013, informing Judge Shoenthal that he could change designated beneficiaries by completing a form available on a county website. Judge Shoenthal replied that he would complete a new beneficiary form.

That same month, Judge Shoenthal told his sister that he had revised his will to reflect his "intention to leave everything to [Plaintiffs] and little to nothing to Fran." At a November 23 lunch, Judge Shoenthal told his sister that he was in the process of changing the beneficiary designation for his pension. On November 25, 2013, Judge Shoenthal completed and signed the change-of-beneficiary form, designating the Plaintiffs as the sole beneficiaries. Judge Shoenthal also handwrote, "I want each of my children to receive 50% of my pension." Attached to the change-of-beneficiary form was a Post-It note containing the Board's address. Judge Shoenthal placed the form on or in his desk. Over the next two days, Judge Shoenthal worked in his office and handled repairs to his car.

Judge Shoenthal had surgery on November 27, was released from the hospital the next day, and died from an embolism on December 1, 2013. Judge Shoenthal never mailed or delivered the change-of-beneficiary form.

Around the time Judge Shoenthal was released from the hospital, Fran discovered that he had changed or intended to change the beneficiaries on his pension plan. About a week after Judge Shoenthal's death, Fran submitted an application to receive Judge Shoenthal's pension benefits. Later that month, the change-of-beneficiary form was found on or in Judge Shoenthal's desk, and Fran was told about it. On January 1, 2014, the Board began sending monthly pension payments to Fran. A few days later, one of the Plaintiffs hand-delivered the signed change-of-beneficiary form to the Board and requested that it be honored. The Board informed Plaintiffs that it would not recognize the change-of-beneficiary form, but did not provide a reason.

Id. at 516-517. Plaintiffs subsequently sued the Board and their mother, Fran,

alleging that the Board wrongfully disbursed and Fran improperly claimed their deceased father's entire pension benefits when their father had designated that benefits be paid to them. The trial court granted the Board's and Fran's motions for judgment on the pleadings on the ground that Judge Shoenthal did not provide notice to the Board of a change in beneficiaries.

3

Id. at 516.

We affirmed the trial court, finding that "Judge Shoenthal did not provide written notice to the Board as required by [Section 908 of the] Pension Code,[2] and thus did not effectuate the change in beneficiaries upon which Plaintiffs' claims rest." Id. at 516. The trial court then granted the Board's motion for attorney fees under OCGA § 9-15-14 (a) and (b), on the ground that Plaintiffs' claims against the Board "suffer from a complete absence of any justiciable issue of law or fact" and that "Plaintiffs lacked substantial justification for bringing this action against [the Board],

---

[2] Section 908 of the Pension Code provides in relevant part:

All participants shall, on a form provided for that purpose, designate a person or persons to receive the benefits payable in the event of the death of the participant. Such person or persons shall be the beneficiary of the participant. The participant may from time to time change the beneficiary by written notice to the pension board, and upon the receipt by the pension board of such change, the rights of all previously designated beneficiaries to receive any benefit under this plan shall cease.

*Shoenthal II*, supra, 337 Ga. App. at 519, citing Pension Code § 908 (b) (9) (A).

4

in that their positions and claims against [the Board] are substantially frivolous and substantially groundless." In awarding $71,318.71 in fees,[3] the trial court noted that

> [t]here is simply no reasonable interpretation of Section 908 of the Pension Code that could conceivably support Plaintiff's contention that the Pension Board received the requisite written notice that they, and not Defendant Fran Shoenthal, are Judge Shoenthal's beneficiaries under the Pension Plan.

We granted Plaintiffs' application for discretionary review of the award of attorney fees.

> Pursuant to OCGA § 9-15-14 (a), the trial court shall award attorney fees when a party asserted a claim, defense or other position with "such a complete absence of any justiciable issue of law or fact" that the party could not reasonably have believed that the court would accept it. We affirm an award under subsection (a) if there is any evidence to support it. Pursuant to OCGA § 9-15-14 (b), the court may award attorney fees if a party brought or defended an action that "lacked substantial justification" or "was interposed for delay or harassment, or if the court finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct." We review a subsection (b) fee award for abuse of discretion.

---

[3] Plaintiffs did not challenge below the sufficiency of the evidence submitted in support of the amount of fees requested by the Board or the reasonableness of those fees.

(Citations and punctuation omitted.) *Reynolds v. Clark*, 322 Ga. App. 788, 789-90 (1) (746 SE2d 266) (2013). "[T]o the extent that the evidence relevant to the question of attorney fees consists of the state of the law, we make our own assessment of that evidence and decide for ourselves whether the claim asserted below presented a justiciable issue of law." (Citations, punctuation and footnote omitted.) *Gibson Constr. Co. v. GAA Acquisitions I*, 314 Ga. App. 674, 676-677 (725 SE2d 806) (2012) ("Generally speaking, an award of attorney fees cannot be sustained if it is based on an argument about the meaning of a statute, where the statute does not speak explicitly to the issue at hand, where the statute has not previously been interpreted with respect to that issue, and where some support for the argument can be gleaned from the text or purpose of the statute."). Moreover, the mere fact that the Board prevailed on its motion for judgment on the pleadings, does not mandate an award of attorney fees. See *Brown v. Kinser*, 218 Ga. App. 385, 387 (1) (461 SE2d 564) (1995) ("applicant is not entitled to attorney fees merely because summary judgment was granted in his favor"). "[F]or purposes of OCGA § 9-15-14, the relevant question is whether some authority arguably supported [Plaintiffs'] position." *Russell v. Sparmer*, 339 Ga. App. 207, 210 (1) (793 SE2d 501) (2016) (physical precedent only), citing *Hall v. Hall*, 241 Ga. App. 690, 692 (1) (527 SE2d 288) (1999) ("where a party

6

asserts an arguably meritorious position, there was not a complete absence of any justiciable issue of law or fact such that an award of attorney fees is appropriate") (punctuation omitted).

The Board contends that the award was warranted because Plaintiffs' claim that the language of the Pension Code was subject to more than one interpretation was unreasonable. In support of this contention, the Board maintains that there is no caselaw addressing the meaning of Section 908 of the Pension Code because "no previous potential claimant has been willing to pursue a claim predicated on a position that is so clearly foreclosed by the plain language of the Pension Code." The Board's argument illustrates one of the classic logical fallacies: appeal to ignorance or an argument from ignorance.[4] An argument from ignorance is "the mistake that is committed whenever it is argued that a proposition is true simply on the basis that it has not been proved false, or that it is false because it has not been proved true." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F3d 1250, 1257 (II) (A) (1) (11th Cir. 2007), citing Irving M. Copi & Carl Cohen, *Introduction to Logic* 93 (8th ed. 1990). The Board mistakenly assumes that the absence of caselaw

---

[4] "[A] fancier, and hence less denigrating, way of describing 'an argument from ignorance'" is the Latin phrase "argumentum ad ignorantiam." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F3d 1250, 1257 (II) (A) (1) (11th Cir. 2007).

7

interpreting Section 908 of the Pension Code proves that Plaintiffs' claim "suffered a complete absence of any justifiable issue of law or fact." This contention ignores that the converse assumption is equally true: The absence of caselaw means that the issue was one of first impression. And, given our analysis in *Shoenthal II* of Section 908 and Judge Shoenthal's conduct in relation to the change-of-beneficiary form, we believe the latter assumption to be more applicable in this case.

Although we affirmed the trial court's decision in *Shoenthal II*, our ruling required us to construe Section 908 of the Pension Code. The Board has not cited to, and we are not aware of, another case where we have interpreted this section of the DeKalb County Pension Code or addressed a similar factual scenario. See, e.g., *Fox v. City of Cumming*, 298 Ga. App. 134, 134-136 (679 SE2d 365) (2009) (reversing award of attorney fees where party relied on statute that had not been interpreted by any court and the language of the statute arguably supported the contention). We ultimately concluded that Judge Shoenthal's failure to personally send the change-of-beneficiary form to the Board meant that he did not comply with the relevant section of the Code. However, given the language in the section of the Pension Code that we were called upon to interpret, it was not unreasonable for Plaintiffs to argue that the change-in-beneficiary form was effective when it was received by the Board. That

8

nothing explicitly precluded Plaintiffs' interpretation of the statute as applied to the facts at issue is further supported by our acknowledgment in *Shoenthal II* that Section 908 did not specify how the form must be delivered to the Board. 337 Ga. App. at 519-520 (1). Compare *Brunswick Floors, Inc. v. Carter*, 199 Ga. App. 110, 111 (3) (403 SE2d 855) (1991) ("Inasmuch as we find no ambiguity as to the meaning of this 'Proposal' which could result in a verdict for appellant, and under the other facts of the case, the trial court did not abuse its discretion in finding the suit lacked 'substantial justification,' that is, that it was 'substantially groundless'"); thus, award under OCGA § 9-15-14 (b) proper).

In sum, it was not far-fetched for Plaintiffs to argue that the completed form found in Judge Shoenthal's desk constituted "written notice" and that the Board was in "receipt" of the form when it was hand-delivered by Plaintiffs after their father's death.

> [W]e must keep in mind that OCGA § 9-15-14 (a) is intended to discourage the bringing of frivolous claims, not the presentation of questions of first impression about which reasonable minds might disagree or the assertion of novel legal theories that find arguable, albeit limited, support in the existing case law and statutes.

9

*Renton v. Watson*, 319 Ga. App. 896, 905 (4) (739 SE2d 19) (2013). "Although we ultimately were not persuaded by the argument that [appellant] made below[,] . . . we cannot say that this argument was nonsensical, illogical, foreclosed by existing precedent, or without some arguable support in the case law and statutes." *Gibson*, 314 Ga. App. at 677.

Further, Plaintiffs cited authority that arguably supported their claim, specifically *Westmoreland v. Westmoreland*, 280 Ga. 33 (622 SE2d 328) (2005), which at the very least supported Plaintiffs' claim that factual questions existed as to whether Judge Shoenthal intended to change his beneficiary and whether he did all that was substantially required of him to effectuate that change. In that case, a deceased city employee had executed three documents prior to his death in order to change the beneficiary for three of his benefits, but was not given a fourth document which would have changed the beneficiary of his retirement plan. Our Supreme Court reiterated that where "the insured has done substantially all that is required of him, or all that he is able to do, to effect a change of beneficiary, and all that remains to be done is a ministerial action of the association, the change will take effect though the details are not completed before the death of the insured." Id. at 34-35. The Court affirmed the trial court's ruling that the employee had effectuated a change, ruling

that "[b]ut for the mistake of the human resources employee . . . [the employee] would have been in complete compliance with the requirements to change the beneficiary." Id. at 35. That we ultimately rejected Plaintiff's reliance on *Westmoreland* does not render Plaintiffs' claim frivolous or lacking any justiciable issue of law or fact.

The Board argues that *Westmoreland* failed to create a justiciable issue of law or fact because it was an interpleader action. The Board specifically argues that, "[a]nother circumstance required for application of the 'substantial compliance' exception recognized by the *Westmoreland* court is a showing that the pension plan . . . or other entity controlling the benefits at issue 'stand[s] indifferently' as to the conflicting claims of the parties asserting entitlement to the benefits, as would be the case in an interpleader action." Because Plaintiffs in this case elected to sue the Board after it paid benefits to Fran, thus giving it a significant stake in the outcome of the case, the Board was forced to pick a side and support Fran's entitlement to benefits; thus, strict compliance was required and Plaintiffs' reliance on *Westmoreland's* "substantial compliance" exception suffered from a complete absence of any justiciable issue of law or fact. We disagree. Until our decision in *Shoenthal II*, it was not clear that a benefit association must "stand indifferently" before a trial court can exercise its equitable powers to determine whether the insured did substantially all

11

that he was able to do to effect a change of condition. In *Westmoreland*, Justice Carley took this position in a special concurrence, but a special concurrence is not binding precedent. See *Green v. Green*, 263 Ga. 551, 553 (1) (437 SE2d 457) (1993). If the Georgia Supreme Court's opinion had been clear in *Westmoreland*, then there would have been no need for Justice Carley to write his special concurrence. And again, our clarification of *Westmoreland* in *Shoenthal II*, did not render the Plaintiffs' arguments without some arguable support. *Gibson*, supra.

For all of the above reasons, we conclude that Plaintiffs' claims were not frivolous under OCGA § 9-15-14; Plaintiffs did not lack substantial justification for bringing their claims and those claims did not suffer from a complete absence of any justiciable issue of law or fact. Accordingly, we reverse the trial court's fee award under OCGA § 9-15-14.

*Judgment reversed. Dillard, C. J., and Ray, P. J., concur*.