**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 25, 2022**

# In the Court of Appeals of Georgia

A22A0104. ALPHA RHO CORPORATION OF DELTA DELTA    McF-004
DELTA v. MATHIS APARTMENTS, INC.

MCFADDEN, Presiding Judge.

For 58 years, the Delta Delta Delta sorority house in Athens, Georgia used a sewer line that crossed property owned by Mathis Apartments, Inc. The sorority house's owner, Alpha Rho Corporation of Delta Delta Delta, had constructed the sewer line in 1961 pursuant to an unrecorded written agreement with Mathis that, Alpha Rho argues, gave it an irrevocable sewer easement across Mathis's property. In 2019, Mathis sold the property without notifying the purchaser of the easement, and after discovering Alpha Rho's sewer line the purchaser severed and capped it, which rendered the sorority house uninhabitable.

Alpha Rho sued Mathis, arguing among other things that Mathis's failure to notify the purchaser of the sewer easement wrongfully extinguished the easement. The action was not successful; the trial court dismissed it for failure to state a claim. But the trial court also awarded Mathis attorney fees under OCGA § 9-15-14 (a), which authorizes such fees where "there exist[s] such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim[.]" That attorney fees award is the subject of this discretionary appeal.

As detailed below, Alpha Rho's action involved some justiciable issues of law. So the trial court erred in awarding attorney fees under OCGA § 9-15-14 (a) and we reverse.

1. *Facts and procedural history.*

As amended, Alpha Rho's complaint against Mathis alleged that in 1961, shortly after obtaining real property for the purpose of building a sorority house, Alpha Rho entered into a written but unrecorded agreement with the owners of two adjoining lots. Mathis was one of those property owners.

That agreement, hereinafter referred to as the "sewer agreement," provided as follows:

2

It is agreed among Alpha Rho House Corporation, Mrs. Evelyn E. Powell individually and as executrix of the will of A. M. Powell and Mathis Apartments, Inc. that Alpha Rho House Corporation will construct a six inch sewer line from the house being constructed on its property on Milledge Avenue, along the northerly side of Mrs. Powell's lot to the southwesterly corner of Mathis Apartments' lot and thence across Mathis Apartments['] lot to Lumpkin Street, and in consideration of crossing Mrs. Powell's lot and Mathis Apartments' lot, Alpha Rho has paid to each of them the sum of One Dollar ($1.00) and Alpha Rho and Mathis Apartments do give Mrs. Powell the right to tap onto said sewer line at any point thereon Mrs. Powell's property or Mathis Apartments' property and Alpha Rho does give Mathis Apartments the right to tap onto said sewer line at any point on its property.

In accordance with these terms, Alpha Rho installed a sewer line at its own expense and used and maintained the line from the time of its installation until late 2019.

Mathis acquired Mrs. Powell's lot in 1967. Mathis owned both of the lots referenced in the sewer agreement from 1967 until August 2019, when it sold its property to Athens Terraces, LLC. Mathis did not disclose to Athens Terraces the existence of the unrecorded sewer agreement or the presence of Alpha Rho's sewer line on the property. A few months later, Athens Terraces conveyed the property to another entity, Lumpkin Street, LLC, which discovered the sewer line in December

3

2019. In late December 2019, Lumpkin Street severed and capped the sewer line, which rendered the sorority house uninhabitable.

Alpha Rho asserted contract and tort claims against Mathis. In its contract claim, Alpha Rho alleged that Mathis breached the sewer agreement by taking actions that extinguished the easement created by that agreement, namely by selling the property to Athens Terraces without disclosing either the easement or the agreement. Alpha Rho alleged that Mathis's failure to disclose the easement and agreement to Athens Terraces also breached a duty of good faith and fair dealing implied in the sewer agreement. In its tort claim, Alpha Rho alleged that Mathis breached a private duty that it owed Alpha Rho, both to disclose the sewer agreement to the third-party purchaser and to act in a manner that was not inconsistent with or in derogation of Alpha Rho's easement rights.

Mathis moved to dismiss Alpha Rho's complaint for failing to state a claim under OCGA § 9-11-12 (b) (6). The trial court granted that motion and dismissed the complaint, holding that "[t]he facts deemed to have been admitted as true do not establish a breach of the sewer agreement or of any common law or statutory duty, and the [c]ourt declines to accept [Alpha Rho's] request to impose a new theory of liability on former owners of servient estates." Alpha Rho did not appeal that ruling.

Mathis then filed a motion for attorney fees under both OCGA § 9-15-14 (a) and (b). After a hearing on the motion, the trial court entered an order awarding fees under OCGA § 9-15-14 (a) on the ground that there was no authority supporting Alpha Rho's allegation that Mathis owed it a duty to notify Athens Terraces of the unrecorded sewer agreement or any easement created by that agreement. The trial court also held that Alpha Rho had an "affirmative duty to record the [s]ewer [a]greement," which the trial court cited as a basis for the attorney fee award. We granted Alpha Rho's application for discretionary appellate review of the attorney fee ruling.

2. *Analysis.*

Under OCGA § 9-15-14 (a), a trial court may award reasonable and necessary attorney fees and expenses of litigation to a party in a civil action "against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not reasonably be believed that a court would accept the claim, defense, or other position." But "[n]o attorney or party shall be assessed attorney[ ] fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory

5

of law is based on some recognized precedential or persuasive authority." OCGA § 9-15-14 (c). "OCGA § 9-15-14 (a) is intended to discourage the bringing of frivolous claims, not the presentation of questions of first impression about which reasonable minds might disagree or the assertion of novel legal theories that find arguable, albeit limited, support in the existing case law and statutes." *Michelman v. Fairington Park Condo. Assn.*, 322 Ga. App. 316 (744 SE2d 839) (2013) (citation omitted).

We "will affirm a lower court ruling made pursuant to OCGA § 9-15-14 (a) if there is any evidence to support it." *Brewer v. Paulk*, 296 Ga. App. 26, 29 (1) (673 SE2d 545) (2009) (citation and punctuation omitted). But in this case,

> an assessment of the state of the law at the time [Alpha Rho] asserted its claims against [Mathis] is mostly dispositive. So, although we apply the "any evidence" standard of review in this case, to the extent that the "evidence" relevant to the question of attorney fees consists of the state of the law, we make our own assessment of that "evidence" and decide for ourselves whether the claim asserted below presented a justiciable issue of law.

*Gibson Constr. Co. v. GAA Acquisitions I, LLC*, 314 Ga. App. 674, 676 (725 SE2d 806) (2012) (citations, punctuation, and footnote omitted).

Guided by these principles, we conclude that the trial court erred in awarding attorney fees under OCGA § 9-15-14 (a). "[T]he mere fact that [Mathis] prevailed on

6

its motion [to dismiss] does not mandate an award of attorney fees. For purposes of OCGA § 9-15-14, the relevant question is whether some authority arguably supported (Alpha Rho's) position." *Shoenthal v. DeKalb County Employees Retirement System Pension Bd.*, 343 Ga. App. 27, 30 (805 SE2d 650) (2017) (citations and punctuation omitted).

Alpha Rho based its claims on the following propositions: that it had an irrevocable sewer easement across Mathis's property; that the easement was extinguished when Athens Terraces bought the property from Mathis without notice of the easement; and that Mathis had a duty either in contract or tort to act in a manner that would not extinguish the easement. Some authority arguably supports each of these propositions.

First, our decision in *Hopkins v. Virginia Highlands Assn.*, 247 Ga. App. 243 (541 SE2d 386) (2000), supports the proposition that Alpha Rho had an irrevocable easement across the property. As here, that decision involved a written agreement between the owners of adjoining land giving one of them permission to cross the other's property with a sewer line. And, as here, the landowner to whom that permission was granted incurred expenses to construct the sewer line. Citing OCGA § 44-9-4, which provides for the conversion of a parol license into an irrevocable

easement running with the land "when the licensee has acted pursuant thereto and in so doing has incurred expense[,]" we held that the owner that had constructed the sewer line had acquired an irrevocable easement running with the land. *Hopkins*, 247 Ga. App. at 245 (1). See also *Bell Indus. v. Jones*, 220 Ga. 684, 686-688 (141 SE2d 533) (1965).

Next, there is authority supporting the proposition that the irrevocable easement was extinguished when Athens Terraces bought the property without notice of the easement. Again, our decision in *Hopkins* is instructive. In that opinion, we held that, for the easement agreement between the two landowners "to have been effective against subsequent purchasers, the record must show that any such purchaser took with notice of the agreement." *Hopkins*, 247 Ga. App. at 245 (1) (citations and punctuation omitted). We further explained that "a bona fide purchaser from the grantor without knowledge or constructive notice of the existence of the easement would take title free from the easement[.]" Id. at 248 (1) (citation omitted). See OCGA § 44-2-3 (setting out this rule as to "[e]very unrecorded voluntary deed or conveyance of land").

Finally, there is authority that at least arguably supports the contention that Mathis's failure to disclose the easement when it sold the property to Athens Terraces

8

violated a duty it owed to Alpha Rho. The trial court concluded that Alpha Rho was responsible for the loss of the easement by failing to record it, citing *Reidling v. Holcomb*, 225 Ga. App. 229, 230-231 (1) (483 SE2d 624) (1997) (a deed's grantee has a duty to record the deed to supply notice of the grantee's rights under it to a future purchaser of the property). But we find that Alpha Rho's assertion that Mathis's actions also contributed to that loss "was not unreasonable." *Shoenthal*, 343 Ga. App. at 31. The fact that the easement was unrecorded does not affect the enforceability of the sewer agreement or Mathis's obligations under it. See *City of Statham v. Diversified Dev. Co.*, 250 Ga. App. 846, 849 (2) (550 SE2d 410) (2001).

And it was not unreasonable for Alpha Rho to argue that, by taking actions that contributed to the loss of the easement, Mathis violated a duty of good faith and fair dealing in the performance of that sewer agreement. As Alpha Rho correctly points out, "[e]very contract implies a covenant of good faith and fair dealing in the performance of the terms of the agreement." *WirelessMD, Inc. v. Healthcare.com Corp.*, 271 Ga. App. 461, 468 (2) (610 SE2d 352) (2005) (citation and punctuation omitted). "'The underlying principle is that there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Carmichael v. Gonzalez*, 107

9

Ga. App. 746, 749 (2) (131 SE2d 149) (1963) (quoting 5 Williston on Contracts § 670 (revised ed.)).

It is true, as Mathis argues and as the trial court found in dismissing the action for failure to state a claim, that "[t]here is no independent cause of action for violation of a duty of good faith and fair dealing in the performance of a contract apart from breach of an express term of the contract." *Bankston v. RES-GA Twelve, LLC*, 334 Ga. App. 302, 304 (2) (779 SE2d 80) (2015) (citation and punctuation omitted). But we do not agree that there is *no* justiciable issue regarding the application of this principle to circumstances such as this case. Under Georgia law, the contract gave Alpha Rho a perpetual right to the sewer easement once Alpha Rho incurred the expense of building the sewer line. See *Stinchcomb v. Clayton County Water Auth.*, 177 Ga. App. 558, 562 (3) (340 SE2d 217) (1986). To destroy that perpetual right would defeat the purpose of the contract. It is not unreasonable to argue that, notwithstanding the rule articulated in *Bankston*, supra, the covenant of good faith and fair dealing required Mathis to act in a manner that would not impair the easement rights created by the contract, even if the contract did not expressly describe those rights.

10

So, even though the trial court was not persuaded by Alpha Rho's argument on this point, "we cannot say that [Alpha Rho's] claim was *entirely* foreclosed by existing precedent or without some arguable support in case law. It follows that the trial court erred in awarding attorney fees . . . [and w]e therefore reverse the trial court's award of attorney fees under OCGA § 9-15-14 (a)." *Renton v. Watson*, 319 Ga. App. 896, 905-906 (4) (739 SE2d 19) (2013) (emphasis supplied).

Because we find that Alpha Rho's arguments regarding the implied duty of good faith and fair dealing created a justiciable issue that barred an award of attorney fees under OCGA § 9-15-14 (a), we do not address whether Alpha Rho's other arguments also created justiciable issues.

*Judgment reversed. Gobeil and Pinson, JJ., concur*.